[L. A. No. 15454.   In Bank.—March 24, 1937.]

HELEN KEMP, Respondent, v. H. L. LYNCH et al., Appellants.

H. L. Lynch, Charles E. Lynch and O. K. Clarke, *in pro. per.*, for Appellants.

Davis & Thorne and Ernest W. Pitney for Respondent.

SEAWELL, J.—Defendants appeal from a judgment for plaintiff in this action to set aside alleged fraudulent conveyances. Plaintiff Helen Kemp is a judgment creditor of defendant H. L. Lynch, having secured judgment against him for $500 compensatory damages and $250 exemplary damages for slander of title of real property owned by her, with $111.45 allowed for costs. Execution issued upon said judgment was returned unsatisfied. ▆ When the instant action was begun an appeal by Lynch was pending from the judgment in favor of Helen Kemp in the slander of title suit. However, execution had not been stayed, and it is the law that in such cases a judgment creditor who is in a position to levy execution may bring an action to set aside fraudulent conveyances. (*Seawell* v. *Price,* 164 Cal. 265 [128 Pac. 407]; *Rossen* v. *Villanueva,* 175 Cal. 632 [166 Pac. 1004]; *Thomas* v. *Lavery,* 125 Cal. App. 666 [14 Pac. (2d) 158]; 12 Cal. Jur. 1034.) The judgment was subsequently affirmed. (*Lynch* v. *Kemp,* 4 Cal. (2d) 440 [49 Pac. (2d) 817].)

The claim of Helen Kemp for slander of title was asserted by way of cross-complaint in an action commenced by H. L. Lynch to quiet title. After Helen Kemp, plaintiff herein, had filed said cross-complaint praying that title to the prop-

erty described in Lynch's complaint be quieted in her and for damages for slander of her title, but before trial, H. L. Lynch made the several transfers of property owned by him which are herein attacked as fraudulent. The first conveyance attacked by plaintiff herein was made on March 14, 1933, the second, on May 3, 1933. Both were recorded on May 3, 1933, and involved several lots in Los Angeles County. The grantee named therein was "O. K. Clarke, trustee". The beneficiary of said trust is not named in said deeds. Lynch also executed an assignment of his interest in three deeds of trust to "O. K. Clarke, trustee", on May 2, 1933, and this assignment was recorded on May 4, 1933.

In August, 1934, the property described in the two deeds was transferred by Clarke to Motor Fuel Association. Said association is a copartnership composed of O. K. Clarke and Charles E. Lynch, brother of H. L. Lynch. An assignment of the three deeds of trust was executed by Clarke to Motor Fuel Association on November 21, 1934. All transfers were recorded. In addition to H. L. Lynch, Clarke, Charles E. Lynch and Motor Fuel Association are named as defendants herein. Said defendants all appeared in the instant action *in propria persona.*

It is the contention of defendants that H. L. Lynch was indebted to his brother, Charles E. Lynch, upon a secured indebtedness, and that he made the transfer to Clarke as trustee to further secure his brother. O. K. Clarke, trustee, by a power of attorney dated May 15, 1933, authorized H. L. Lynch, the grantor, to do all acts which Clarke as trustee could do. And at about the time of the transfers by Clarke to the Motor Fuel Association, composed of Clarke and Charles E. Lynch, said Charles E. Lynch on behalf of the Motor Fuel Association executed a general power of attorney in favor of H. L. Lynch. H. L. Lynch at all times continued in the management and control of the property transferred by him, but he contends that he was acting as agent for trustee Clarke, and later as agent for the partnership under the above powers of attorney.

Clarke took part in these transactions at the request of H. L. Lynch. He testified that he had contributed not more than $30 to the partnership.

The complaint alleged that the transfers were executed with intent to hinder, delay and defraud plaintiff herein. It was not necessary that the complaint also allege

that H. L. Lynch was insolvent when the transfers were made, or that they were made in contemplation of insolvency. (*Fross* v. *Wotton*, 3 Cal. (2d) 384 [44 Pac. (2d) 350]; *Vogel* v. *Sheridan*, 4 Cal. App. (2d) 298 [40 Pac. (2d) 946]; *First Nat. Bank* v. *Maxwell*, 123 Cal. 360 [55 Pac. 980, 69 Am. St. Rep. 64]; *Bull* v. *Bray*, 89 Cal. 286 [26 Pac. 873, 13 L. R. A. 576]; 12 Cal. Jur. 976; sec. 3439, Civ. Code.) The court found that an actual fraudulent intent existed, and also that the transfers were made in contemplation of insolvency.

There is no merit in defendants' contention that the court was without right to adjudge void the assignments of the three deeds of trust and the notes which they secured for the reason that the Motor Fuel Association to which they were assigned had its partnership headquarters in Nevada, and the notes and deeds of trust may have been there. Each of said deeds of trust covered property in Los Angeles County. The partnership was composed of O. K. Clarke and Charles E. Lynch, and they, as well as H. L. Lynch, appeared generally in this action. The assignments were executed upon the same terms and conditions as the deeds to real property in Los Angeles County which are involved in this action, and as part of the same general transaction.

During the course of his testimony H. L. Lynch stated that one of the notes and deeds of trust had been satisfied and discharged. This matter was not gone into fully. If in fact said note and deed of trust are discharged, that may be shown when plaintiff, pursuant to the judgment herein, seeks to apply the property found to have been fraudulently transferred to the satisfaction of her judgment.

In the instant case the court rejected the contention of defendants that the transfers were made with the *bona fide* intent of giving Charles E. Lynch additional security upon an indebtedness owing to him from H. L. Lynch. "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." (Sec. 3432, Civ. Code; *Hibernia Sav. & L. Soc.* v. *Belcher*, 4 Cal. (2d) 268 [48 Pac. (2d) 681]; *Joint Pole Assn.* v. *Steele*, 213 Cal. 233 [2 Pac. (2d) 335]; *Ferguson* v. *Larson*, 139 Cal. App. 133 [33 Pac. (2d) 1061].) However, if a transfer while appearing to be a lawful preference is made with actual fraudulent intent that it shall not

pay the creditor or give him further security, but with the understanding that it shall be a mere simulated transfer, the grantor retaining the full beneficial interest, such fraudulent intent will vitiate the transfer. (*McGee* v. *Allen*, 7 Cal. (2d) 468 [60 Pac. (2d) 1026]; *Hanscome-James-Winship* v. *Ainger*, 71 Cal. App. 735, 742 [236 Pac. 325]; *Roberts* v. *Burr*, 135 Cal. 156 [67 Pac. 46]; 12 Cal. Jur. 1012, 991.)

■ It appears herein that Charles E. Lynch had made oil leases of lands owned by him to H. L. Lynch upon a royalty basis. Thereafter Charles E. Lynch, lessor, in 1927, transferred to H. L. Lynch one-half of his lessor's royalties to be paid by H. L. Lynch from part of the lands. In consideration thereof H. L. Lynch agreed to make certain monthly money payments to Charles E. Lynch. To secure these money payments H. L. Lynch mortgaged to Charles E. Lynch the oil leasehold interests which he held under lease from Charles E. Lynch.

It is the claim of defendants that the transfers attacked by plaintiff were to further secure these money payments. They were not made in satisfaction of the money payments due under the above contract, since there appears in the record, dated April 14, 1933, an instrument signed by Charles E. Lynch extending the time within which the full amount of these payments should be made and providing for smaller monthly payments in the meantime. There was also testimony from defendants that at the time of the trial herein Charles E. Lynch was still receiving said payments from the profits of the property transferred by H. L. Lynch.

When H. L. Lynch made the transfers herein attacked in the spring of 1933, which was after Helen Kemp had sued him for slander of title, he transferred to Clarke, as trustee, other property owned by him. He admitted that he transferred all real property in California owned by him. It was not shown that he retained real property or other property of value outside of this state. He claimed that after making the transfer he had in this state cash and stock in the amount of between $900 and $1200, but admitted that at the time of entry of judgment in July, 1934, in the slander of title suit he could not then have satisfied said judgment, and that by August, 1934, he was "down and out". Included in the property transferred was the oil leaseholds already mort-

gaged to Charles E. Lynch. If Lynch's object was to give additional security to Charles E. Lynch no reason appears why he should have included in his transfers to Clarke, as trustee, the oil leaseholds upon which Charles E. Lynch already had a mortgage.

The deeds and assignments to O. K. Clarke, trustee, contain no reference to a security transaction. A declaration of trust, executed by the Lynches and Clarke on April 14, 1933, recites the indebtedness of H. L. Lynch to Charles E. Lynch, but is not the usual security deed of trust. It gives C. E. Lynch broad powers inconsistent with his having only a lien for security purposes, including the right, apparently at any time, to require a conveyance to himself, or to the Motor Fuel Association, without regard to whether payments due on the Lynch contract were in default. Transfers to the Motor Fuel Association, a copartnership composed of Charles E. Lynch and O. K. Clarke, were in fact made by Clarke at the request of Charles E. Lynch. By the trust instrument itself it was provided that all powers of the trustee should be delegated to an attorney-in-fact by power of attorney, and by a separate instrument H. L. Lynch was appointed attorney-in-fact. He continued in the management of the properties after, as before, his transfers.

Upon the evidence adduced the court was warranted in concluding that the transfers were not *bona fide*, but made with the actual fraudulent intent on the part of the appealing defendants to hinder, delay and defraud plaintiff, and with the intent that H. L. Lynch should retain the full beneficial interest. "From the very nature of the action direct proof of the fraudulent intent of the parties is an impossibility. For this reason and because the real intent of the parties and the facts of the transaction are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties." (*Fross* v. *Wotton,* 3 Cal. (2d) 384, 393 [44 Pac. (2d) 350, 354].) As in the cited case, so in the instant case, the inference of fraud is reasonable.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Langdon, J., Waste, C. J., and Thompson, J., concurred.

Rehearing denied.