[No. B067439. Second Dist., Div. Four. Mar. 25, 1994.]

KENNETH A. WYZARD, Plaintiff and Appellant, v.
NATHAN GOLLER, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II of Discussion.

1184

**COUNSEL**

Hitchcock, Bowman, Schachter & Beverly, Robert Schachter and William Beverly for Plaintiff and Appellant.

Nathan Goller, in pro. per., for Defendant and Respondent.

**OPINION**

**EPSTEIN, Acting P. J.**—In this case we hold that an encumbrance by a debtor to an attorney, made for value in the form of an antecedent obligation for legal services, is not fraudulent as to another creditor, under applicable provisions of the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.; the Act), and that this is true even though the transfer was a preference that resulted in the debtor being unable to satisfy debts of other creditors.

### FACTUAL AND PROCEDURAL SUMMARY

Kenneth A. Wyzard appeals from a judgment in favor of Nathan Goller, an attorney. The judgment was rendered following Mr. Goller's successful prosecution of a motion for summary judgment. The motion was made and heard in 1992, before the effective date of significant amendments to the summary judgment law enacted that year. We therefore review the propriety of the motion granting summary judgment under the provisions of the prior law, which was then in force. (See *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 301, fn. 4 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

The statute, Code of Civil Procedure former section 437c, and case law construing it, firmly established that summary judgment was to be granted only if the papers showed that there was no triable issue as to any material fact and that the moving party was entitled to judgment as a matter of law; since summary judgment is a drastic remedy, all doubts about the propriety

of a grant should be resolved against the motion, and "[t]o succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

In this case, both parties have commendably avoided disputes over minor and immaterial matters, and as a result of their arguments and concessions here and at the trial court, there is little dispute over the antecedent facts (although the parties do dispute inferences that should be drawn from those facts).

The respondent, Mr. Goller, is a longtime friend and attorney for Steve Manning. He represented Mr. Manning and a business, Varigon, owned by a corporation controlled by Mr. Manning. Appellant had worked for Varigon and commenced an action against the corporation and Mr. Manning personally, claiming an entitlement to commissions generated by sales activity during the years 1979-1982. Mr. Goller and Mr. Manning had been accustomed to the former handling legal affairs of the latter without written retainer agreements. The Wyzard litigation became an exception to this practice because of its relatively large scope. In mid-1987, when it became apparent that the case would go to trial, Messrs. Goller and Manning entered into a formal fee arrangement in which it was agreed that Mr. Goller had rendered services worth $60,000 and had been paid only $10,000, and that anticipated further expenses for trial preparation and trial would amount to at least another $60,000.

A new agreement was entered into toward the end of the trial. By then, it was apparent that a sizable judgment would be rendered against the corporation and Mr. Manning personally, and that they did not have assets sufficient to respond to the judgment and also pay fees earned by Mr. Goller. As a result, Mr. Manning executed a promissory note to Mr. Goller for $85,000 and secured it with his only substantial assets: interests in two pieces of real property, one in Manhattan Beach (his home) and one in El Segundo (commercial property). According to Mr. Goller's frank account in his summary judgment declaration, "Both MANNING and myself were aware that WYZARD would in all probability record an Abstract of Judgment once the judgment was entered and it was apparent that unless I received security for the amount due me for attorney fees, WYZARD would execute on MANNING's interest in his real property and the indebtedness due me would remain unsatisfied."

As a result, Mr. Goller received the two encumbrances, securing a single debt. At about the same time, encumbrances were given to Mr. Manning's

former wife, Christanne Manning, on the same parcels. These were for greater amounts, but junior in priority to Mr. Goller's security. Eventually, the El Segundo property was sold, and the parties (including Mr. Wyzard who, by now, had obtained his judgment for $785,793.46 and presumably had recorded an abstract) entered into conveyances allowing the sale to go through. These parties agreed that the proceeds, some $94,492, would be placed in a trust account pending resolution of their relative entitlements.[1]

Mr. Goller declared that the reasonable value of his services, based on the time he expended in the Wyzard v. Manning litigation, including services rendered on appeal, "is far in excess of $85,000." His billing rate in 1988 was $250 an hour, and he estimated that he had spent over 500 hours on the case, besides advancing about $10,000 for transcripts on appeal. In the summary judgment proceedings before the trial court, Mr. Wyzard conceded that the two security interests received by Mr. Goller were for the same debt, and that Mr. Goller "did the work on this underlying case." We take that statement to mean that Mr. Wyzard agrees that Mr. Goller did the work he claimed to have done.[2] No factual dispute is raised with respect to reasonableness or existence of Mr. Goller's billing rate.

On November 16, 1990, Mr. Wyzard filed an action against Mr. Manning, Mrs. Manning, Mr. Goller, and others. His lawsuit was in six counts, challenging the security interests conveyed to Mr. Goller and to Mrs. Manning. Each cause of action specifically identifies the defendant or defendants against whom it is directed. Only two causes of action, the first and the fourth, name Mr. Goller. Mr. Goller argues that the nature of the pleadings is such that Mr. Wyzard failed to raise at the trial court the issue he pursues on appeal: violation of the Act. We shall discuss the pleadings in greater detail in our treatment of that issue.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1]Later, Mr. Manning filed a chapter 7 bankruptcy petition. Although the parties dispute the failure of Mr. Wyzard to file a complaint in bankruptcy objecting to Mr. Manning's discharge, the bankruptcy proceedings are not material to this appeal. It is sufficient to say that none of the conveyances at issue here was set aside.

[2]While Mr. Goller did not keep time sheets, his declaration detailed the considerable work he did in the preparation and trial of the underlying litigation, and in connection with its appeal.

*See footnote, *ante*, page 1183.

## III

### *Fraudulent Conveyance*

■ Mr. Wyzard's argument to the trial court, and to this court, is that the deeds of trust to Mr. Goller were made "with actual intent to hinder, delay, or defraud" Mr. Wyzard as a creditor of Mr. Manning. Mr. Wyzard invokes Civil Code section 3439.04: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor."

Before proceeding with a discussion of this provision, we note the statute to which it would be opposed according to appellant's argument. Civil Code section 3432, enacted as part of the 1872 Field Codes, provides that "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." Even before enactment of the Field Codes, it had been recognized that a failing or insolvent debtor could prefer one creditor over another. (See *Randall* v. *Buffington* (1858) 10 Cal. 491, 494 [". . . it is difficult to perceive how the payment of a debt which [is] justly owed, and which was past due, can be tortured into an act to hinder, delay, and defraud creditors"]; *Wheaton* v. *Neville* (1861) 19 Cal. 41, 46.) Subsequent cases continued the judicial refusal to set aside a preferential transfer solely because it worked a preference. (See *McGee* v. *Allen* (1936) 7 Cal.2d 468, 474 [60 P.2d 1026]; *Bradley* v. *Butchart* (1933) 217 Cal. 731 [20 P.2d 693].) If the transfer was for fair consideration and not fraudulent, the only basis to set it aside was through bankruptcy, which now reaches transfers made within 90 days of the adjudication. (11 U.S.C. § 547(b)(4)(A); see *McGee* v. *Allen, supra,* 7 Cal.2d at p. 474.)

The general rule permitting a debtor to prefer one creditor or group of creditors over others has long been subject to exceptions in cases of fraud. The subject was dealt with by the National Conference of Commissioners on Uniform State Laws which, in 1918, proposed what became the Uniform Fraudulent Conveyance Act (the Uniform Act). By 1984, the Uniform Act had been adopted in 25 jurisdictions. (See 7A West's U. Laws Ann. (1984) Bus. & Fin. Laws, comrs. note, p. 639.) California was one of them; it

adopted the uniform law in 1939. (Stats. 1939, ch. 329, § 9, p. 1669.) Civil Code section 3439.07, which was taken directly from section 7 of the Uniform Act, declared conveyances made to hinder, delay or defraud present or future creditors to be fraudulent.[3]

As a result of major changes in the Bankruptcy Act and the Uniform Commercial Code, and in recognition of other changes in the law, the commissioners undertook a study and revision of the Uniform Act in 1978. The result was the 1984 version, which, like its predecessor, has been widely adopted. (7A West's U. Laws Ann., *op. cit supra*, Bus. & Fin. Laws, comrs. note, p. 639.) The California version was enacted in 1986, and was in effect when the conveyances at issue in this case were made. (See Stats. 1986, ch. 383, § 2.) (The law has been retitled; it is now the Uniform Fraudulent Transfer Act; see Civ. Code, § 3439.)

Civil Code section 3439.04 combines the substance of several separate provisions of the former Act. (See *Reddy* v. *Gonzalez* (1992) 8 Cal.App.4th 118, 123 [10 Cal.Rptr.2d 55].) We have quoted the language pertinent to this case, which appears in subdivision (a). The redrafted provision is substantially the same as Civil Code section 3439.07 of the former Act. Civil Code section 3439.12 of the new Act provides in part that provisions of the new law, insofar as they are substantially the same as provisions of the former statute, "shall be construed as restatements and continuations, and not as new enactments."

We therefore turn to the principal issue on this appeal: whether a preferential transfer, if made for proper consideration ("value" under the new law; see Civ. Code, § 3439.03), but with recognition that the transfer will effectively prevent another creditor from collecting on his debt, is one made with "actual intent to hinder, delay, or defraud" that creditor.

As we have discussed, California cases predating the Act rejected the claim that a debtor's preference of some creditors over others is improper as to those who are not preferred. Later cases reached the same result on the basis of Civil Code section 3432, without discussion of the Act. (See *U.S. Fid. & Guar. Co.* v. *Postel* (1944) 64 Cal.App.2d 567, 572 [149 P.2d 183]

---

[3]Civil Code former section 3439.07 stated: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." (12 West's Ann. Civ. Code (1970 ed.) p. 623.)

["[t]he statutory right of a debtor to prefer one creditor to another is based upon the principle that in the absence of fraud the owner of property may do with it as he pleases . . . , nor does the fact that such preference hinders or delays other creditors in the collection of their claims render it void, nor the fact that the preferred creditor had knowledge that such consequences would follow the preference"]; *United States* v. *Eleven Certain Parcels of Land* (S.D.Cal. 1942) 45 F.Supp. 289 [preference of one creditor over another proper under California law even if insolvency results].)

This has been the rule for over 400 years, since the Statute of Elizabeth in 1571. (13 Eliz., ch. 5 (1571); see 1 Glenn, Fraudulent Conveyances and Preferences (rev. ed. 1940) §§ 58, 289, pp. 79, 488.) Cases decided under the law of jurisdictions that adopted the Uniform Act reached the same result under section 7 of the uniform law. (See *Irving Trust Co.* v. *Kaminsky* (D.N.Y. 1937) 19 F.Supp. 816.)

The *Irving Trust Co.* decision, a leading case, pointed out that a transfer made in good faith to secure an antecedent debt is declared to be for fair consideration, and does not amount to an act to "hinder, delay or defraud" an unpreferred creditor. (19 F.Supp. at p. 818.)

The New Jersey Supreme Court summarized the rule in the following terms: "We start with the proposition that a preference as such is not a fraudulent conveyance. True, a creditor who collects from an insolvent debtor fares better than other claimants. Yet if the transfer were set aside in favor of another creditor, there would be but a substitution of one preference for another. For that reason a preference cannot be undone by a competing creditor whether the preference was obtained through judicial process or by a transfer from the debtor, and the Uniform Fraudulent Conveyance Act did not alter that proposition." (*Smith* v. *Whitman* (1963) 39 N.J. 397 [189 A.2d 15, 18]; see also *Marroquin* v. *Barrial* (1959) 174 Cal.App.2d 540, 543 [345 P.2d 30]; *In re Olson* (Bankr. D.Minn. 1984) 45 Bankr. 501, 505; *Peoples-Pittsburgh T. Co.* v. *Holy Family P. Nat. C. Ch.* (1941) 341 Pa. 390 [19 A.2d 360, 361]; *American Cas. Co. of Reading Pa.* v. *Line Materials Indus.* (10th Cir. 1964) 332 F.2d 393, 396; *Manello* v. *Bornstine* (1954) 44 Wn.2d 769 [270 P.2d 1059, 45 A.L.R.2d 494]; *Boston Trading Group, Inc.* v. *Burnazos* (1st Cir. 1987) 835 F.2d 1504, 1508 [hypothetical debtor who owes $10,000 to A and $20,000 to B, but has only $8,000, which he uses to satisfy his debt to A, does not make "fraudulent conveyance" under the Uniform Act because payment satisfies a debt owed to legitimate creditor; "B must find a remedy in bankruptcy, or in some other, law"].)

We conclude that the transfer to Mr. Goller, in payment for his legal services, while a preference, is not for that reason a transfer made to "hinder, delay or defraud" Mr. Wyzard.

Appellant argues the circumstances of the transfer evoke some of the "badges of fraud" from which an intent to defraud may be presumed. Section 4, subdivision (b) of the Uniform Act lists 11 such "badges" which may be considered in deciding whether there was actual intent to hinder, delay or defraud. The California statute did not enact the "badges of fraud" provision, although a legislative committee that considered the bill through which the 1986 Act was enacted noted them and stated that the presence of one or more of them does not create a presumption of fraud, but "is merely evidence from which an inference of fraudulent intent may be drawn." (Assem. Com. com., 12 West's Ann. Civ. Code, § 3439.04 (1993 pocket supp.) p. 149.)[4]

Only a few of these factors have an arguable application to this case: the debtor was threatened with suit (indeed, he had been successfully sued) before the transfer; the transfer was of substantially all of his assets; and the transfer occurred shortly before the debt was incurred (if the judgment is regarded as the debt; in fact, the judgment recognized a preexisting indebtedness).

None of this raises a triable issue of material fact. It was established and conceded that Mr. Goller had rendered the services he claimed to have rendered, and thus had earned the fee secured by the encumbrances. This also disposes of the argument in appellant's brief, made despite the unrebutted declaration of Mr. Goller and the concession in the trial court, that Mr. Goller had not earned the fee he claimed.

---

[4]The noted indicia of fraud are: (a) Whether the transfer or obligation was to an insider; (b) whether the debtor had retained possession or control of the property transferred after the transfer; (c) whether the transfer or obligation was disclosed or concealed; (d) whether the debtor was sued or threatened with suit before the transfer was made or obligation was incurred; (e) whether the transfer was of substantially all the debtor's assets; (f) whether the debtor has absconded; (g) whether the debtor had removed or concealed assets; (h) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) whether the transfer had occurred shortly before or shortly after a substantial debt was incurred; and (k) whether the debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor. (Uniform Act, § 4, subd. (b).)

DISPOSITION

The judgment is affirmed.

Vogel (C. S.), J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.