NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1368

APTIX CORPORATION,

Plaintiff/Counterclaim Defendant,

and

META SYSTEMS, INC. and MENTOR GRAPHICS CORPORATION,

Counterclaim Defendants,

v.

QUICKTURN DESIGN SYSTEMS, INC.,

Defendant/Counterclaimant-
Appellee,

v.

AMR MOHSEN,

Third Party Claimant-Appellant.

_____

DECIDED:  June 21, 2005

_____

Before NEWMAN, CLEVENGER and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA.  Dissenting opinion filed by Circuit Judge NEWMAN.

GAJARSA, Circuit Judge.

Amr Mohsen ("Mohsen") appeals a decision by the United States District Court for the Northern District of California issued pursuant to Federal Rules of Civil Procedure ("FRCP") 69(a) in which the court voided Mohsen's security interest in the assets of Aptix Corporation as a fraudulent transfer under California law. Aptix Corp. v. Quickturn Design Sys., Inc., No. C 98-00762 (N.D. Cal. November 5, 2003). Quickturn Design Systems, Inc. ("Quickturn") filed the underlying motion to enforce the court's prior judgment awarding Quickturn $4.2 million in attorney fees stemming from a patent infringement suit filed by Aptix. Id. Because the district court did not commit clear error in finding that Aptix granted the security interest to Mohsen with the actual intent to hinder Quickturn's satisfaction of the attorney fees award, we affirm the judgment.

## I. BACKGROUND

Aptix is a developer of hardware-logic-emulation technology and the owner of U.S. Patent No. 5,544,069 ("the '069 patent"). Mohsen founded Aptix and at all relevant times was the majority shareholder, chief executive officer and chairman of the company. Mohsen is also the only inventor named on the '069 patent.

Quickturn is one of three primary competitors of Aptix in the hardware-logic-emulation technology field. Mentor Graphics Corporation ("Mentor") and its French subsidiary Meta Systems, Inc. ("Meta") also compete with Aptix. After Quickturn won a United States patent infringement suit against Mentor and Meta, Aptix entered into an agreement with Mentor and Meta whereby Aptix licensed the '069 patent and granted Meta the right to sue to enforce the patent. Mentor agreed to advance Aptix all costs of prosecuting a patent infringement suit against Quickturn. Aptix and Meta subsequently

filed an infringement suit against Quickturn in the United States District Court for the Northern District of California.

On June 14, 2000, the court dismissed the Aptix/Meta complaint as a sanction for Aptix's having "engaged in a pattern of fraudulent behavior through Amr Mohsen, its founder, chairman, chief executive officer and lead inventor. Aptix tried to defraud defendant and the Court through the alteration and fabrication of evidence, perjury and the staged theft of evidence." Aptix Corp. v. Quickturn Design Sys., Inc., No. C 98-00762 (N.D. Cal. September 8, 2000) (summarizing its order of June 14, 2000). In addition to dismissing the complaint, the court held the '069 patent unenforceable and found that the case was exceptional such that Quickturn was entitled to attorney fees. Aptix Corp. v. Quickturn Design Sys., Inc., No. C 98-00762 (N.D. Cal. June 14, 2000). The June 14, 2000 Order required Aptix and Quickturn to negotiate the amount of the attorney fees award by July 20, 2000. The parties agreed on a settlement amount of $4.2 million with Aptix retaining the right to object to certain categories of Quickturn's attorney fees and costs.

During the summer of 2000, Aptix was in financial trouble having unsuccessfully attempted to borrow money, raise equity financing and merge with another company. Aptix, slip op. at 3. On July 25, 2000, Aptix and Mohsen entered into a security agreement whereby Aptix granted Mohsen a security interest in all of its assets in exchange for certain loan funds. Prior to July 2000, Mohsen had loaned at least $2 million to Aptix on an unsecured basis. Aptix, slip op. at 2. Pursuant to the security agreement, Mohsen loaned Aptix at least $9.7 million between July 2000 and September 2003. In that same time frame, Mohsen received nineteen installments on

the debt totaling approximately $1.5 million. Aptix used the money from Mohsen to maintain its operations by paying employees, vendors and other creditors. Aptix, slip op. at 3.

On July 27, 2000, Aptix filed an objection to certain categories of Quickturn's attorney fees and costs. On August 10, 2000, Quickturn made its last filing on the issues surrounding the judgment by submitting a response to Aptix's objection. It was not until August 16, 2000, that Mohsen perfected his security interest by filing a UCC financing statement. On September 8, 2000, the court overruled Aptix's objections, awarded Quickturn the entire amount of attorney fees sought and entered final judgment in the case.

Aptix appealed to this court and we affirmed in part and vacated in part the district court's judgment. Aptix, 269 F.3d at 1378. The court affirmed the dismissal of Aptix's complaint, the finding of exceptional case and the award of attorney fees, but vacated the finding that the '069 patent was unenforceable. The unenforceability determination was vacated on the ground that Aptix's forgery of documents related to the date of conception and scope of the claims was litigation misconduct and not inequitable conduct before the PTO. Id. at 1377.

After the judgment was affirmed on appeal, Quickturn collected on the proceeds of a $2 million supersedeas bond posted by Aptix. On July 16, 2002, Aptix and Quickturn entered into a payment agreement whereby Aptix agreed to make monthly payments on the remainder of the judgment starting January 2, 2003. No such payments were made and on February 18, 2003, Quickturn established a judgment lien on Aptix's assets pursuant to California law.

On May 27, 2003 Quickturn levied on certain of Aptix's assets, creating an execution lien thereon, and the assets were delivered to the U.S. Marshal. Mohsen then made a third party claim to the assets based on his security interest executed in July 2000. Believing the security interest to be a fraudulent scheme to prevent Quickturn from recovering its award, Quickturn filed a motion to enforce judgment pursuant to FRCP 69(a). After an evidentiary hearing, the district court entered an order finding that Aptix had granted the security interest to Mohsen with "actual intent . . . to hinder or delay satisfaction of the judgment due its creditor." Aptix, slip op. at 5. Accordingly, the court voided Mohsen's security interest as a fraudulent transfer under California Civil Code § 3439.04(a). Id. at 6.

Mohsen appeals the court's order voiding his security interest. The appeal was originally filed with the Ninth Circuit but transferred here at Mohsen's request. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.    DISCUSSION

This court reviews "nonpatent issues according to the law of the regional circuit where appeals from the district court would normally lie." Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1305 (Fed. Cir. 2003). The district court's determination that Aptix granted the security interest to Mohsen with the intent to hinder or delay Quickturn's satisfaction of the judgment was a finding of fact that the Ninth Circuit reviews for clear error. In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992).

The district court applied California's fraudulent transfer statute in determining that the security interest granted to Mohsen should be voided. That statute reads:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was

04-1368                                    5

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction .

> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Code § 3439.04(a). Section 3439.04 has been construed to mean that a transfer is fraudulent if the provisions of either subdivision (a)(1) regarding actual intent or subdivision (a)(2) regarding the circumstances of the transfer have been satisfied. Annod Corp. v. Hamilton & Samuels, 100 Cal. App. 4th 1286, 1294 (2002); see also Mejia v. Reed, 31 Cal. 4th 657, 664 (2003) (treating current subdivisions (a)(1) and (a)(2) as separate criteria for finding a fraudulent transfer).

The court relied on subdivision (a)(1) of § 3439.04 in finding that Aptix made the transfer to Mohsen with the actual intent to hinder or defraud Quickturn. Aptix, slip op. at 5. In so finding, the district court identified three "badges of fraud" that supported an inference of fraudulent intent. At the time the court issued its order, the badges of fraud were not statutory, but appeared in the Legislative Committee commentary to § 3439.04. In 2004, the California legislature added subsection (b) to § 3439.04 which codified the following nonexclusive list of the badges of fraud:

(b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). The three badges of fraud relied on by the district court now appear as items (1), (4) and (9) on the codified list. The district court determined that while Aptix was insolvent it granted a security interest to an insider and that that transfer occurred just before a substantial judgment was to be entered against Aptix. Aptix, slip op. at 5.

Before the district court, Mohsen argued that he should not be punished for simply lending money to Aptix so that it could continue as a going concern. The district court rejected this argument finding that Aptix and Mohsen had

> an arrangement by which Dr. Mohsen lends Aptix money, which Aptix uses to pay employee salaries and essential creditors in an effort to keep functioning. . . . Dr. Mohsen receives money back from Aptix on demand. . . . This setup allows. . . Aptix to pay unsecured creditors as it sees fit, while effectively avoiding its obligations toward a judgment creditor that holds a judgment lien."

Id. Thus, the district court concluded that the arrangement was "not as innocent as Dr. Mohsen suggests." Id.

04-1368                                    7

On appeal, Mohsen takes issue with both the district court's factual findings and the legal principles it applied. Mohsen's factual challenge is fundamentally a reassertion of the argument rejected by the trial judge, namely that the granting of the security interest to Mohsen was intended to benefit not defraud creditors by keeping Aptix operational. Borrowing a concept from bankruptcy cases, Mohsen argues that the on-going operation of Aptix was a "legitimate supervening purpose" such that the confluence of three badges of fraud was insufficient to establish actual intent to defraud.

Mohsen's reliance on the concept of a "legitimate supervening purpose" is misplaced. The concept is typically applied in bankruptcy cases where courts have held that in assessing whether a transfer constitutes a fraudulent conveyance under 11 U.S.C. § 548(a)(1), the confluence of several badges of fraud can establish "conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994) (quoting Max Sugarman Funeral Home Inc. v. A.D.B. Investors, 926 F.2d 1248, 1255 (1st Cir. 1991)). Once multiple indicia of fraud are established, the burden shifts to the transferee to prove that there was a "legitimate supervening purpose" for the transfer at issue. Id. There is no bright line test for what constitutes a legitimate supervening purpose; the issue is simply whether the presumption of fraud has been adequately rebutted. See In re Bateman, 646 F.2d 1220, 1223 n. 4 (8th Cir. 1981) ("The burden which shifts now upon a showing of reasonable grounds is not a burden of going forward with the evidence requiring the bankrupt to explain away natural inferences, but a burden of proving that he has not committed the objectionable acts with which he has

04-1368                                    8

been charged." (quoting Shainman v. Shear's of Affton, Inc., 387 F.2d 33, 37 (8th Cir. 1967)).

Here, Mohsen attempts to rebut the presumption of fraudulent intent by focusing on the reason that Aptix needed to borrow money from Mohsen, i.e. it could not obtain funding elsewhere, and its ultimate use of the money, i.e. to pay employees and other creditors. Although Mohsen's argument may explain why Aptix entered into the loan arrangement with Mohsen, it does not explain why it was necessary for Aptix to grant Mohsen a security interest in substantially all of its assets when Mohsen had never required such an interest for his past loans. It also does not address the district court's express finding that the arrangement was not as innocuous or well-intentioned as Mohsen suggests. Mohsen failed to rebut the circumstantial inference arising from the badges of fraud and, therefore, it was not clear error for the district court to conclude that Aptix granted the security interest with the actual intent to defraud Quickturn.

Mohsen's legal arguments are also without merit. First, he argues that California law protects the right of debtors to "pay one creditor in preference to another, or . . . give to one creditor security for the payment of his demand in preference to another." Cal. Civ. Code § 3432. Mohsen fails to recognize, however, that the section of the California Civil Code on which he relies does not insulate debtors who make transfers with the intent to defraud creditors not party to the transaction. Kemp v. Lynch, 8 Cal. 2d 457, 460-61 (1937) (a transfer that appears to be a lawful preference, but which is made with a fraudulent intent will be vitiated); Roberts v. Burr, 135 Cal. 156, 159 (1901) (stating that a debtor may pay one creditor in preference to another in the absence of fraud).

Similarly, Mohsen argues that Aptix did not have the requisite fraudulent intent because it entered into the security agreement in order to benefit some of its creditors. This argument reads § 3439.04(a)(1) as if it requires that the debtor intend to defraud <u>all</u> of its creditors, whereas the language actually used in the statute mandates only that the debtor act with the actual intent to "defraud <u>any</u> creditor" (emphasis added).

Finally, Mohsen asserts a defense under Cal. Civ. Code § 3439.08(a), which states that a "transfer or an obligation is not voidable under subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."  Mohsen argues that the security interest should not be voided because Aptix engaged in the security agreement in a good faith effort to stay in business and the amount of money loaned to Aptix exceeded the value of the security granted in return.  This argument fails for two reasons.  First, it appears that Mohsen did not invoke § 3439.08(a) in the proceedings before the district court and he is therefore prevented from raising the statutory defense for the first time on appeal.  <u>Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976); <u>United States v. Carlson</u>, 900 F.2d 1346, 1349 (9th Cir. 1990).  Even if this argument were properly before us, Mohsen only identifies evidence tending to show Aptix's good faith in entering into the transaction and points to no evidence showing that Mohsen himself acted in good faith as required by the statute.  Cal. Civ. Code § 3439.08(a).  Mohsen's heavy reliance on the California case <u>Annod Corp. v. Hamilton & Samuels</u>, 100 Cal. App. 4th 1286 (2002) does not address the flaws in his argument.

In <u>Annod</u>, the court applied § 3439.08 to find that a law firm had not engaged in a fraudulent transaction when it executed partnership draws pursuant to a pre-existing

partnership agreement rather than pay an outstanding judgment for unpaid rent. 100 Cal. App. 4th at 1293-94. Mohsen makes much of the court's conclusion that the partners had received the draws in good faith in part because "if the draws were not paid, none of the former partners would have continued working and generating revenue for the struggling law practice." Id. at 1293. Mohsen asserts that under Annod transactions engaged in with the purpose of keeping a struggling business afloat cannot constitute fraudulent transactions. In making this assertion, Mohsen ignores the extensive additional evidence relied on by the court as the complete basis for finding that the partners acted in good faith. Id. at 1296 (focusing on evidence that the payments made were substantially less than previous draws, represented undermarket values for the services performed, and were consistent with the partner's significant efforts to increase funds available to creditors). Annod does not stand for the proposition that a transfer made to enable an enterprise to stay in business cannot constitute a fraudulent transaction. Contrary to Mohsen's assertions, the district court did not err as a matter of law in determining that Aptix's grant of a security interest to Mohsen was a voidable transaction under California law.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the district court voiding as a fraudulent transfer the security interest Aptix granted to Mohsen.

## IV. COSTS

No costs.

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1368


APTIX CORPORATION,

Plaintiff/Counterclaim Defendant,

and

META SYSTEMS, INC. and MENTOR GRAPHICS CORPORATION,

Counterclaim Defendants,

v.

QUICKTURN DESIGN SYSTEMS, INC.,

Defendant/Counterclaimant-Appellee,

v.

AMR MOHSEN,

Third Party Claimant-Appellant.


NEWMAN, <u>Circuit Judge</u>, dissenting.


I respectfully dissent.  Dr. Mohsen loaned over nine million dollars to the company he had founded and operated, secured by the assets of the company.  My colleagues hold that the purpose of making the secured loan was to defraud future creditors, based on two undisputed facts: that Dr. Mohsen expected an adverse attorney fee award in favor of Quickturn, and that his previous smaller loans to his

company were unsecured. I cannot agree that the requirement of security for the larger loans establishes fraudulent intent.

The district court found that the facts established an intent by Aptix to prefer Dr. Mohsen as a creditor over Quickturn, and thus to "hinder or delay" the satisfaction of Quickturn's future judgment in terms of California Code §3439.04 (a transfer is fraudulent if made with "actual intent to hinder, delay, or defraud any creditor"). See Aptix Corp. v. Quickturn Design Sys., Inc., No. C 98-00762 (N.D. Cal. Sep. 8, 2000). However, California law also establishes that "a preference, is not for that reason a transfer made to 'hinder, delay or defraud.'" Wyzard v. Goller, 23 Cal. App. 4th 1183, 1191 (1994). The Wyzard court explained that "it has been the rule for over 400 years, since the Statute of Elizabeth in 1571," that a transfer which establishes a preference is not thereby fraudulent. Id. at 1190 (citing 13 Eliz., ch. 5 (1571)); see United States Fid. & Guar. Co. v. Postel, 64 Cal. App. 2d 567, 572 (1944) ("nor does the fact that such preference hinders or delays other creditors in the collection of their claims render it void, nor the fact that the preferred creditor had knowledge that such consequence would follow the preference").

This rule is codified in California Code §3432, which states that "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." California precedent reaffirms that the preference itself does not establish wrongful fraudulent conduct. Wyzard, 23 Cal. App. 4th at 1190; see Annod Corp. v. Hamilton & Samuels, 100 Cal. App. 4th 1286, 1299 (2002) (observing that the fraudulent conveyance statute employs "the language of *deliberate wrongful conduct*") (emphasis in original).

04-1368                                    2

Although the panel majority is correct that an intent to prefer one creditor over another does not preclude the existence of a wrongful intent, it is clear from the district court's opinion that its inference was based solely on its belief that it was fraudulent for Aptix to prefer Dr. Mohsen by entering into a secured loan instead of an unsecured loan.  The district court described as "not as innocent as Dr. Mohsen suggests" the "setup" whereby "Dr. Mohsen lends Aptix money, which Aptix uses to pay employee salaries and essential creditors in an effort to keep functioning."  Aptix, slip op. at 5.  I point out that there is a large space between absence of innocence, and deliberate fraud.  Undoubtedly all concerned knew that a secured creditor has priority over unsecured creditors.  That does not establish an intent to defraud the unsecured creditors.  See Wyzard, 23 Cal. App. 4th at 1190.

Precedent illustrates instances of fraudulent intent.  In Kemp v. Lynch, 8 Cal. 2d 457, 460-61 (1937) an ostensibly lawful preference made with "the understanding that it shall be a mere simulated transfer" was fraudulent.  See also Bank of Cal. v. Virtue & Scheck, Inc., 140 Cal. App. 3d 1026, 1039 (1983) (collecting cases) ("California courts have consistently treated a secret reservation in the grantor as potent evidence of fraud").  Unlike Kemp, here there was no simulated transfer, but regular monthly loans to meet payroll and other operating obligations.  The facts of this case are more analogous to those of Wyzard, in which a secured loan was taken in order to pay an existing debt when it became known that an adverse judgment was imminent; the court held that there was no fraud in a transfer made "with recognition that the transfer will effectively prevent another creditor from collecting on his debt."  Wyzard, 23 Cal. App. 4th at 1189-90 (concluding that the facts did not raise a triable issue of fact as to fraud,

04-1368                                        3

notwithstanding the existence of three factors of fraud); see also Annod Corp., 100 Cal. App. 4th at 1299 (no triable issue of fact, despite three factors of fraud).

Aptix granted Dr. Mohsen a security interest; the money was needed and used for legitimate business purposes. The panel majority states that this "does not explain why it was necessary for Aptix to grant Mohsen a security interest" when "Mohsen had never required such an interest for his past loans." Maj. op. at 9. It is surely not fraudulent to obtain security for a loan of over nine million dollars, whatever the relationship between the lender and the recipient. Knowledge of a potential adverse judgment does not establish fraudulent intent when making a loan to meanwhile keep the company alive and operating. See Wyzard, 23 Cal. App. 4th at 1189 (a transfer in anticipation of liability, "with recognition that the transfer will effectively prevent another creditor from collecting on his debt," is not fraudulent).

The security interest here at issue was only to the amount of the loan. See §3439.04(b) (requiring that debtor not receive a "reasonably equivalent value in exchange for the transfer or obligation" in order to establish "constructive fraud"). The fact that the security was limited to the value of the loan is also relevant under subdivision (a), the subdivision under which the court found fraud, as in §3439.04(a)(8) (a "factor" in determining fraudulent intent is "[w]hether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"). See Annod, 100 Cal. App. 4th at 1298 (in "considering the enumerated 'badges of fraud' the 'court should evaluate all the relevant circumstances involving a challenged transfer' and 'may appropriately take into account all indicia negativing as well as those suggesting fraud'") (quoting Legis. Com. com.,

04-1368                                        4

12A West's Ann. Civ. Code foll. §3439.04, p. 290 (1997)).  These provisions of the California Code hinge the determination of fraud on whether the exchange was for equivalent value, a fact here undisputed.

My colleagues have thus lapsed into error, in holding that the making of a secured loan instead of an unsecured loan in anticipation of an adverse judgment establishes deliberate wrongful conduct.  Waschek v. Dep't of Motor Vehicles, 59 Cal. App. 4th 640, 647 (1997) ("inferences [of fraudulent intent] must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork").  The moneys obtained and the security interest granted for the loan were routine business practice.  The secured nine million dollars here loaned provided essential funds to pay employees, vendors, and creditors.  The facts of record do not establish fraud under California statute and precedent.  I respectfully dissent from the panel majority's contrary holding.