Filed 9/16/14  Avner v. Outpatient Surgical Unit of Santa Monica CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CORREY B. AVNER, | B248523 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC420259) |
| v. | |
| OUTPATIENT SURGICAL MEDICAL UNIT OF SANTA MONICA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ramona G. See, Judge.  Reversed in part and affirmed in part as modified.

Brown Rudnick, Joel S. Miliband and Sarah A. Milroy for Plaintiff and Appellant.

Champ & Associates, Debra S. Johnson-Champ for Defendants and Appellants.

_____

In 1999, Correy Avner sued a medical partnership, Outpatient Surgical Medical Unit of Santa Monica (OSMU), for malpractice. The case settled in 2007 after substantial law and motion practice that included an appeal and reversal of summary judgment for OSMU, OSMU ultimately agreeing to entry of judgment against it in the amount of $725,000. Avner, however, was unable to collect on the judgment from OSMU, which had ceased operations in 2002 and possessed no assets.

In 2009, Avner sued OSMU and its sole general partner, Dr. Jerrold Sherman, asserting in his operative first amended complaint two causes of action: (1) "General partner liability," in which Avner alleged Sherman as OSMU's general partner was liable for the 2007 judgment; and (2) "fraudulent transfer[]", in which Avner alleged OSMU fraudulently transferred partnership assets to Sherman.

The trial court dismissed the first cause of action upon demurrer, finding it was barred by the three-year limitations period applicable to medical malpractice actions. Avner's second claim was tried to the court, which found OSMU fraudulently transferred two partnership assets to Sherman. The court entered judgment against both Sherman and OSMU in the amount of the transfers.

On appeal, Avner contends Sherman's liability for the 2007 judgment arises not from OSMU's medical malpractice, as the trial court found, but from the 2007 judgment itself, which constituted an independent partnership obligation for which OSMU's general partner is liable as a matter of law. Therefore, he argues, the 2009 lawsuit on that 2007 obligation was timely and should not have been dismissed. We agree that the 2007 judgment constituted an independent partnership obligation but not that Sherman is liable for it.

Defendants also appeal, arguing there was no substantial evidence of any fraudulent transfer, and at any rate OSMU cannot be held liable in damages for both the underlying judgment and amounts allegedly transferred to avoid it. We conclude substantial evidence supported the court's finding that fraudulent transfers occurred and agree that OSMU cannot be held liable both on the 2007 judgment and for amounts

transferred to avoid it.  We therefore affirm as to Sherman (although we modify the damages award) and vacate the damages judgment as to OSMU.

**Background**

## A.    2007 Judgment

OSMU was formed in 1987 to establish an outpatient surgical facility with office space for physicians, with Sherman was its sole general partner.  In 1998, Avner allegedly contracted the human papillomavirus during a procedure performed by an OSMU physician.  In January 1999, he sued OSMU, the physician and others for professional negligence.  Sherman was not named as a defendant.  OSMU's insurer, Western Indemnity Insurance Company, provided a defense.  On January 28, 2002, the trial court granted OSMU's motion for summary judgment, but on June 5, 2004, we reversed that ruling and remanded the matter.  (*Avner v. Lai* (2004) 2004 Cal.App.Unpub.LEXIS 1131.)

On May 30, 2007, Avner served an offer to compromise on OSMU.  The offer stated that "Pursuant to Code of Civil Procedure section 998, Plaintiff Correy B. Avner offers to have judgment entered in his favor in this action in the sum of $725,000 in satisfaction of all claims for damages, costs and expenses, attorney fees and interest.  You may indicate your acceptance of this offer by signing the statement to that effect set forth below."

OSMU signed the statement on June 13, 2007, representing that "DEFENDANT OUTPATIENT SURGICAL MEDICAL UNIT OF SANTA MONICA accepts the above offer on the terms stated."

On July 3, 2007, the trial court entered judgment as follows:  "Pursuant to the accepted offer to enter judgment, a copy of which is attached hereto as Exhibit A and incorporated herein, it is hereby ordered, adjudged, and decreed that plaintiff Correy B. Avner take $725,000 from defendant Outpatient Surgical Medical Unit of Santa Monica.  That sum includes all damages, costs, expenses, fees, and interest."  (Code Civ. Proc., §

3

998, subd. (b)(1) [an offer to settle a lawsuit and proof of acceptance may be filed with the court, which shall enter judgment accordingly].)[1]

OSMU had no assets with which to satisfy the judgment.

## B. Transfer No. 1: Health South Settlement Proceeds

Meanwhile, Sherman, who had attempted to sell OSMU in 1998 to a company called Health South, caused OSMU to sue Health South for breach of the purchase agreement contract. The matter settled in July 2002 for an undisclosed amount, $250,000 of which was transferred by OSMU to Sherman in partial payment for loans he had made to the partnership.[2] The partnership was then officially dissolved and ceased all operations.

## C. Transfer No. 2: Western Indemnity Payment

In 2004, Western Indemnity, OSMU's insurance company, was placed in receivership in Texas and stopped providing a defense against Avner's malpractice action. Sherman retained a new attorney, David B. Berschauer, and in 2005 submitted a claim to Western Indemnity's receiver for reimbursement of Berschauer's fees. On January 8, 2010, Western Indemnity's receiver issued a check to OSMU in the amount of $147,489.93. The receiver mailed the check to Berschauer, who deposited it in January 2010 and remitted approximately $110,000 to Sherman.[3]

---

[1] This is not exactly what the parties agreed to. Strictly speaking, OSMU agreed only to accept Avner's offer "to have judgment entered in his favor" in the amount of $725,000, not to actually pay that amount.

[2] The trial court found the amount transferred to Sherman was $300,000. As we will explain below, no evidence supports a finding that more than $250,000 was transferred.

[3] The trial court found the entire amount of the check, $147,489.93, was remitted to OSMU, which transferred approximately $110,000 to Sherman and the remainder to Berschauer for Sherman's benefit. Accordingly, the court found OSMU fraudulently transferred the entire $147,489.93 to or for Sherman. As we will explain below, no evidence supports a finding that more than $110,000 was transferred.

4

**D.     Present Action**

   1.     Partner Liability

On August 21, 2009, Avner sued Sherman, seeking to hold him personally liable as OSMU's general partner for the 2007 judgment for $725,000. The trial court sustained Sherman's demurrer to that cause of action and dismissed it, finding it was grounded in medical malpractice that occurred in 1998, and was therefore barred by the three-year limitations period for a medical malpractice action (Civ. Code, § 340.5).

   2.     Fraudulent Transfer

Avner also asserted a fraudulent conveyance cause of action against OSMU and Sherman, alleging OSMU transferred the Health South settlement proceeds and the Western Indemnity payment to Sherman in an attempt to defraud its creditors. Avner sought damages and a declaration that the transfers were void. After substantial law and motion practice, this cause of action was tried to the court.

At trial, Sherman contended Avner's claims were barred by the doctrine of laches and the applicable limitations period had run on any claim for fraudulent transfers of the Health South settlement proceeds, the last one of which occurred in August 2002. He also argued the monetary transfers from OSMU to himself constituted reimbursement for loans he had made to the partnership.

   a.     Health South Settlement Proceeds

Sherman testified the Health South settlement proceeds were completely distributed by August 13, 2002 at the latest, when $100,000—"the last check"—was paid to OSMU's attorney. He could not recall how much he personally received, but in his deposition before trial had testified he received "a sum of less than $300,000; maybe 250, something like that." Sherman admitted he was aware OSMU had outstanding debts at the time of the transfers and insufficient assets to pay them, but maintained he had no intent to cause OSMU to avoid Avner's judgment.

   b.     Western Indemnity Payment

Sherman testified Western Indemnity's receiver issued a check for $147,489.93 to Berschauer, OSMU's attorney, as reimbursement for legal fees. He testified Berschauer

5

deposited the check, withdrew the amount owed to him, and sent approximately $110,000 to Sherman, which he kept as reimbursement for attorneys fees he had previously paid on OSMU's behalf. Sherman admitted he had no documentary evidence of any such payment or any loan made to OSMU.

### 3. Trial Court Ruling

The trial court found no evidence of laches and found Avner's claim with respect to the 2002 transfer of Health South settlement proceeds was filed within the applicable seven-year limitations period. The court found OSMU transferred $300,000 of those proceeds and the entire $147,489.93 Western Indemnity payment to Sherman with intent to defraud its creditors. The court found Sherman's testimony regarding loans he made to OSMU was not credible and noted Sherman was an insider, the transfers sapped substantially all of OSMU's assets, and at the time they were made Sherman knew OSMU had substantial debts it would be unable to repay. The court entered judgment against OSMU and Sherman in the amount of $447,489.93, comprising the purported $300,000 Health South settlement proceeds and $147,489.93 Western Indemnity payment.

Defendants timely appealed, and Avner timely appealed the dismissal of his first cause of action on demurrer.

## Discussion

### A. Avner's Cause of Action for General Partner Liability

In his first cause of action Avner alleged that in 2007 a judgment for $750,000 was entered in his favor and against OSMU in a medical malpractice action. He alleged Sherman was liable for that judgment. The trial court sustained Sherman's demurrer to the cause of action without leave to amend, finding it was "based on allegations of medical negligence" that had occurred in 1998, and was thus barred by the limitations period applicable to an action for medical malpractice. Avner contends the court misunderstood the thrust of the action, as he alleged Sherman was liable for the 2007 judgment itself—which he argued constituted an independent partnership obligation—not the medical malpractice claim on which it was based.

6

When a demurrer is sustained, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "A demurrer tests the legal sufficiency of factual allegations in a complaint. [Citation.] In reviewing the sufficiency of a complaint against a general demurrer, this court treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*Id.* at pp. 42–43.) We independently construe the meaning of statutes as a question of law. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869-870.)

We agree with Avner that the trial court incorrectly concluded his lawsuit was based upon allegations of medical negligence. In his first cause of action Avner expressly sought to hold Sherman liable only for the 2007 judgment, not for medical negligence. The complaint mentioned medical negligence only in passing, and even then only to explain the genesis of the judgment. The court therefore incorrectly concluded the lawsuit was governed by the limitations period applicable to a negligence action. The question is whether Sherman could be held liable for the judgment against OSMU.

Under California's Uniform Limited Partnership Act of 2008 (Corp. Code, § 15900 et seq.),[4] a general partner is generally liable for all "obligations" of the limited partnership. (Corp. Code, § 15904.04, subd. (a).)[5] "A judgment against a limited

---

[4] Until January 1, 2010, all partnerships were governed by the Uniform Partnership Act of 1994 (Corp. Code, § 16100 et seq.). As of January 1, 2010, however, the Uniform Limited Partnership Act of 2008 governed limited partnerships. (Corp. Code, § 15912.06, subd. (a).) Although the former act arguably governed the transactions at issue here, we will speak in terms of the latter because it is substantively identical to the former. (Compare Corp. Code, §§ 16306 & 16307 with §§ 15904.04 & 15904.05.)

[5] Corporations Code section 15904.04 provides:
"(a) Except as otherwise provided in subdivision (b), all general partners are liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law.

7

partnership is not by itself a judgment against a general partner" and "may not be satisfied from a general partner's assets unless there is also a judgment against the general partner." (Corp. Code, § 15904.05, subd. (b).)[6] Avner seeks such a judgment here (Corp. Code, § 15904.05, subd. (a) ["a general partner may be . . . named in a separate action"]), contending the 2007 judgment against OSMU standing alone is an "obligation" within the meaning of section 15904.04 for which Sherman may be held liable, i.e., one upon which Avner may obtain a second judgment. We disagree.

"[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) To ascertain such intent, "we begin with the words of the statute and give these words their ordinary meaning."

---

"(b) A person that becomes a general partner of an existing limited partnership is not personally liable for an obligation of a limited partnership incurred before the person became a general partner."

[6] Corporations Code section 15904.05 provides:
"(a) To the extent not inconsistent with Section 15904.04, a general partner may be joined in an action against the limited partnership or named in a separate action.
"(b) A judgment against a limited partnership is not by itself a judgment against a general partner. A judgment against a limited partnership may not be satisfied from a general partner's assets unless there is also a judgment against the general partner.
"(c) A judgment creditor of a general partner may not levy execution against the assets of the general partner to satisfy a judgment based on a claim against the limited partnership, unless the partner is personally liable for the claim under Section 15904.04 and:
"(1) a judgment based on the same claim has been obtained against the limited partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;
"(2) the limited partnership is a debtor in bankruptcy;
"(3) the general partner has agreed that the creditor need not exhaust limited partnership assets;
"(4) a court grants permission to the judgment creditor to levy execution against the assets of a general partner based on a finding that limited partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of limited partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or
"(5) liability is imposed on the general partner by law or contract independent of the existence of the limited partnership."

8

(*Hoechst Celanese Corp. v. Franchise Tax Board* (2001) 25 Cal.4th 508, 519.)
Additionally, we construe the language in the context of the statutory framework as a whole, keeping in mind the nature and purpose of the statute in which the language appears, and harmonizing, where possible, separate statutes relating to the same subject. (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.)  When the legislative intent is unambiguous, the plain meaning controls and there is no need for construction.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 621.)  Only if the language is unclear will we look to extrinsic aids such as legislative history to determine intent. (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239.)

Corporations Code section 15904.04 does not define the term "obligation."  The Code of Civil Procedure does define it, but not in a particularly helpful manner:  "An obligation is a legal duty by which one person is bound to do or not to do a certain thing; and arises from:  [¶]  1. Contract; or [¶] 2. Operation of law."  (Code Civ. Proc., § 26.)  Under this construction, a monetary judgment conceivably constitutes an obligation in the sense that it legally binds the judgment debtor to pay something to the judgment creditor.  And it would follow that under section 15904.04, such a legal duty owed by the partnership flows also to the partner.

But subdivision (c) of Corporations Code section 15904.05 restricts the scope of a partner's duty to pay the partnership's judgments.  That subdivision first provides:  "A judgment creditor of a general partner may not levy execution against the assets of the general partner to satisfy a judgment based on a claim against the limited partnership, unless the partner is personally liable for the claim under Section 15904.04 . . . ."  (Corp. Code, § 15904.05, subd. (c).)  If this were the extent of the passage, Avner's interpretation of a general partner's duty would be correct:  A creditor with a claim against a limited partnership—such as an unpaid judgment—could obtain a judgment on that claim against a general partner pursuant to section 15904.04, which makes a general partner liable for the partnership's obligations.  But subdivision (c) then places five restrictions on the judgment creditor's ability to levy execution against the general partner's assets—essentially cabining the partner's duty to pay—the first of which

9

reveals that Avner's conception is not what the Legislature intended: In addition to obtaining a judgment against a partner based on a claim against the partnership, the judgment creditor must also obtain "a judgment based on the *same claim* . . . against the limited partnership" itself. (Corp. Code, § 15904.05, subd. (c)(1), italics added.)

By thus distinguishing between a judgment and a claim, subdivision (c) of Corporations Code section 15904.05 reveals that a judgment cannot by itself be the claim, as it would be nonsensical to require a creditor to obtain a judgment against a partnership "based on the same judgment."

In short, for a partner to be liable for a judgment against the partnership, Corporations Code section 15904.05 requires that judgments against each be obtained based on the same claim. Here, it is unclear whether any claim underlies the 2007 judgment, which resulted from settlement, not from resolution of Avner's medical malpractice lawsuit on the merits. Medical malpractice was therefore not the basis of the judgment, the agreement to settle under Code of Civil Procedure section 998 was. A settlement under section 998 "does not . . . constitute an adjudication of either liability or damages." (*Milicevich v. Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1004.) Nor did the judgment result from OSMU's agreement to pay Avner $750,000 to settle the lawsuit, as OSMU did not agree to pay but only to have judgment entered against it in that amount. Therefore, no contractual claim formed the basis of the judgment either. It is as Avner has always maintained: the judgment *is* the claim. We acknowledge that a hanging judgment with no predicate claim seems anomalous, but the parties created it by agreeing in their Code of Civil Procedure section 998 settlement only that judgment would be entered, not that OSMU would pay Avner.

In sum, we agree the court misconstrued Avner's complaint, but the result was correct because a general partner may be liable for a judgment against a limited partnership only if the partner is liable for the claim underlying that judgment.

## B.     Fraudulent Conveyance

Defendants contend the trial court erred in finding Sherman caused OSMU to transfer the proceeds of the Health South settlement and an insurance payment to

Sherman with the intent to defraud OSMU's creditors, namely Avner. "This is an issue of fact, and '[i]ts proof is peculiarly dependent upon the circumstances which surround the questioned transaction, and the inferences which the trier of fact may reasonably draw therefrom.' [Citation.]" (*Bulmash v. Davis* (1979) 24 Cal.3d 691, 699.) We are thus bound by the trial court's finding if it is supported by substantial evidence. (*Ibid.*)

A fraudulent conveyance under the Uniform Fraudulent Transfers Act (UFTA, Civ. Code, §§ 3439-3439.12) is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.' [Citation.]" (*Kirkeby v. Superior Court of Orange County* (2004) 33 Cal.4th 642, 648.) A transfer under the UFTA is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset . . . , and includes payment of money, release, lease, and creation of a lien or other encumbrance." (Civ. Code, § 3439.01, subd. (i).) A transfer may be invalid either because of actual fraud (§ 3439.04, subd. (a)) or constructive fraud (§§ 3439.04, subd. (b), 3439.05).

Under the actual fraud theory, as relevant here, a transfer is fraudulent as to both present and future creditors, if it is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."[7] (Civ. Code, § 3439.04, subd. (a)(1).) In determining actual intent, the court may consider certain "badges of fraud," which include, among other factors: (1) whether the transfer was to an insider; (2) whether before the transfer was made, the debtor had been sued or threatened with suit; (3) whether the transfer was substantially all the debtor's assets; (4) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (5) whether the debtor was insolvent or became insolvent shortly after the transfer was made; and (6) whether the transfer occurred shortly before or shortly after a substantial debt was incurred. (§ 3439.04, subd. (b).) "Proof of fraudulent intent often consists of '*inferences* from the circumstances surrounding the transaction . . . .' [Citation.]" (*Eddy v. Temkin* (1985) 167 Cal.App.3d 1115, 1122.)

---

[7] The parties agree Avner constitutes a creditor of OSMU within the meaning of the UFTA.

Here, OSMU, managed by Sherman, distributed a portion of the Health South settlement proceeds to Sherman. At the time, OSMU was involved in ongoing litigation with Avner and had outstanding debts and insufficient assets to pay them. Moreover, the settlement proceeds constituted substantially all of OSMU's assets, as OSMU had ceased operations and sold its real and personal property.

Although Sherman testified the Health South settlement proceeds constituted repayment of loans he had made to OSMU, defendants presented no documentary evidence of any loans and the trial court concluded Sherman's testimony was not credible. (See Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"]; see also *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371 ["[a]n inference may be drawn from a party's failure to produce available evidence"].) The evidence, or lack thereof, strongly suggested OSMU received no consideration for its transfer of assets.

Defendants argue there was no evidence OSMU intended to defraud Avner because at the time the Health South settlement proceeds were transferred, Sherman could not have known that two years later the Court of Appeal would reverse the malpractice judgment and OSMU's insurance company would be unable to provide a settlement, resulting in Avner becoming OSMU's creditor. But Sherman admitted at trial that when OSMU distributed the Health South settlement proceeds to its partners he was aware OSMU still had outstanding debts and insufficient assets to pay them.

Additionally, in January 2010, after Avner obtained a $725,000 judgment against OSMU and the present action was filed, Western Indemnity's receiver mailed OSMU a check for $147,489.93, $110,000 of which was ultimately transferred to Sherman. At the time of the transfer, the payment constituted substantially all OSMU's assets, as OSMU was a defunct entity with no remaining assets. Although Sherman maintained the transfer was to repay him for attorneys fees paid on behalf of OSMU to defend against Avner's malpractice claim, he presented no evidence of any bills or payments to attorneys to establish OSMU received any consideration for the transfer.

12

Defendants rely on *Wyzard v. Goller* (1994) 23 Cal.App.4th 1183 (*Wyzard*) to argue OSMU's transfer of the insurance payment to Sherman to reimburse him for attorneys fees was a transfer for proper consideration that lawfully preferred one creditor over another. *Wyzard* is distinguishable. There, a debtor executed an $85,000 promissory note to his attorney during a trial in which it became apparent a sizable judgment would be rendered against him. (*Id.* at p. 1186.) Upon entry of that judgment, the plaintiff sued the attorney for fraudulent conveyance. (*Id.* at p. 1187.) The trial court granted summary judgment to the attorney and the appellate court affirmed, finding that because the evidence established, and the parties conceded, the attorney rendered services worth $85,000 prior to the transfer, the transfer was for proper consideration and validly preferred one creditor over another. (*Id.* at pp. 1185, 1189-1190.) Unlike the attorney in *Wyzard* who established he rendered services worth $85,000 prior to the transfer, Sherman produced no evidence he paid any attorneys fees on behalf of OSMU to establish he was a creditor of OSMU and the transfer was for proper consideration.

Substantial evidence therefore existed from which the trial court could reasonably infer OSMU transferred the Health South settlement proceeds and the insurance payment to Sherman with intent to defraud its creditors.

**Laches**

Defendants argue Avner's fraudulent conveyance claim is barred by laches due to Avner's belated attempts to hold Sherman liable for OSMU's medical malpractice. After the Court of Appeal reversed the judgment in favor of OSMU in 2004, Avner named Sherman as a Doe defendant in the action, but the trial court granted OSMU's motion to quash service of summons on Sherman, finding the three-year statute of limitations to add a defendant barred Avner from naming Sherman. Then, a year after obtaining the $725,000 judgment against OSMU in 2007, Avner filed a motion to add Sherman to the judgment as an alter ego of OSMU. The trial court denied Avner's motion, finding that because the settlement appeared collusive and Avner failed to act with due diligence, it could exercise its equitable discretion to deny the motion. Avner appealed the ruling, but later dismissed his appeal.

13

Based on these facts, defendants argue Avner's fraudulent conveyance claim should be barred by laches because Avner delayed in naming Sherman as a defendant in the malpractice action, delayed in bringing a motion to amend the underlying judgment to include Sherman, and delayed in bringing the fraudulent conveyance action. As a result, defendants suffered prejudice because they materially changed their position by spending the Health South settlement proceeds and throwing away OSMU's files during the intervening time period. This argument is without merit.

"'Laches is an equitable defense to the enforcement of stale claims. It may be applied where the complaining party has unreasonably delayed in the enforcement of a right, and where that party has either acquiesced in the adverse party's conduct or where the adverse party has suffered prejudice . . . . [Citations.]' [Citations.]" (*Straley v. Gamble* (2013) 217 Cal.App.4th 533, 538.) "Whether laches has occurred in a particular case is primarily a question of fact for the trial court and an appellate court will not interfere with the trial court's decision unless it is obvious a manifest injustice has occurred or the decision lacks substantial support in the evidence. [Citation.]" (*Transwestern Pipeline Co. v. Monsanto Co.* (1996) 46 Cal.App.4th 502, 519-520.)

Substantial evidence supports the trial court's determination that defendants failed to meet their burden to prove unreasonable delay. Avner testified that after he obtained a judgment against OSMU for medical malpractice in October 2007, he made attempts to collect the judgment until he discovered OSMU had been dissolved and had no assets. He then filed a motion to amend the judgment to add Sherman as an alter ego of the partnership, which was denied in October 2008, before filing the present action for fraudulent conveyance in August 2009. Even if this can be considered a delay, "'[d]elay is not a bar unless it works to the *disadvantage or prejudice* of other parties.' [Citations.]" (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1419.) No such prejudice existed. Defendants had available testimony from Sherman, the key player, and had been on notice for many years of litigation involving Avner's medical malpractice claim and his attempts to secure a judgment against OSMU and its partners. (See *Transwestern Pipeline Co. v. Monsanto Co.*, *supra*, 46 Cal.App.4th at p. 523.)

14

Defendants appear to argue Avner's fraudulent conveyance action should be barred by laches because he should have included Sherman in his medical malpractice claim against OSMU. But Avner's fraudulent conveyance action arose after Avner obtained a judgment against OSMU. Whether Avner should have sued Sherman earlier for liability on the medical malpractice claim has no bearing on whether Avner should have sued defendants earlier for fraudulent conveyance.

## Statute of Limitations

Defendants argue Avner brought his claim seven years after the alleged fraudulent transfer of the Health South settlement proceeds, and therefore that portion of Avner's claim is barred by the statute of limitations under Civil Code section 3439.09, subdivision (c), which provides that, notwithstanding any other provision of law, a fraudulent transfer action is "extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." The statute of limitations is an affirmative defense and therefore defendants had the burden to prove all facts essential to show Avner's action, filed on August 21, 2009, was brought over seven years after OSMU transferred the Health South settlement proceeds to Sherman. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396; *Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1309.) We conclude defendants failed to meet this burden.

Defendants produced no evidence of when the settlement proceeds were transferred to Sherman. Instead, defendants produced a check Sherman wrote to his attorney on August 13, 2002. This check established only the date Sherman paid his attorney. The sole link between the check and the Health South settlement proceeds was Sherman's testimony that it was the final check written from settlement proceeds, which the trial court concluded was unreliable and less than candid and could not support a finding that the Health South settlement proceeds were transferred prior to August 21, 2002. "[W]itness credibility is in the province of the trial court." (*In re Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1015, fn. 9.) "[S]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness even though the witness is uncontradicted." (*Beck Development Co. v. Southern*

15

*Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) The trier of fact's rejection of a witness's testimony has "the effect of removing that testimony from the evidentiary mix." (*Id.* at p. 1205.) Without Sherman's testimony as to the transfer's timing, defendants failed to present any evidence to establish the statute of limitations barred a portion of Avner's fraudulent conveyance claim.

**Damages**

Defendants challenge the damage award on several grounds. First, they argue the trial court's award of $447,489.93 in damages was unsupported by the evidence. We agree.

Our power "'to review the trier of fact's determination of damages is severely circumscribed. An appellate court may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption [citations] or where the award is so out of proportion to the evidence that it shocks the conscience of the appellate court. [Citations.]'" (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361.)

Here, the trial court awarded Avner $300,000 of the Health South settlement proceeds and $147,489.93 of the Western Indemnity payment transferred from OSMU to Sherman. The trial court found Sherman received between $250,000 and $300,000 of the settlement proceeds based on his deposition testimony that he received "a sum of less than $300,000; maybe 250, something like that." Sherman also testified at trial that he received money from the insurance payment, and the parties produced evidence of a check written from OSMU's insurance company's receiver to OSMU's attorney for $147,489.93. Although we will not "reweigh evidence, reappraise the credibility of witnesses, or resolve factual conflicts contrary to the trial court's findings" (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 195), Sherman's statement that he received less than $300,000 of the Health South settlement is not evidence that he received $300,000. Nor could the court conclude from the fact that Western Indemnity sent OSMU's attorney a check for $147,489.93 that Sherman received that amount. The only evidence

as to either amount was that Sherman received $250,000 of the former and $110,000 of the latter.  We will modify the judgment accordingly.

Second, defendants argue the trial court erred in entering a judgment for damages against OSMU.  We agree and so modify the judgment.

In an action for relief against a fraudulent transfer, a creditor may obtain an "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." (Civ. Code, § 3439.07, subd. (a)(1).)  "To the extent the transfer is voidable, the creditor 'may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less,' and the judgment may be entered against '[t]he first transferee of the asset or the person for whose benefit the transfer was made.' ([Civ. Code,] § 3439.08, subd. (b)(1))." (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1235.)  A creditor who has obtained a judgment for damages against a debtor in a prior action may not, however, "recover a personal judgment against the debtor for the amount of money the debtor subsequently transfers to third parties to hinder, delay, or defraud the creditor in collecting on the original judgment," as this would violate the rule against double recovery.  (*Id.* at pp. 1237, 1239.)

When a trial court makes a clear, uncontroverted and prejudicial error of law in the formulation of damages, the appellate court may, to avoid subjecting the parties to any further delay or expense, modify the judgment and affirm it, rather than remand it for a new determination.  (*Maughan v. Correia* (2012) 210 Cal.App.4th 507, 523; *Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 547; see Code Civ. Proc., § 43 [the courts of appeal may modify any judgment or order appealed from, and may direct the proper judgment or order to be entered].)  Here, the trial court erred in entering a judgment for damages against OSMU, rather than entering a judgment voiding the fraudulent transfers.

17

**Disposition**

The judgment for damages against Sherman is changed from $447,489.93 to $360,000, and is affirmed as modified. The judgment for damages against OSMU is reversed and a new judgment is entered voiding $360,000 in fraudulent transfers from OSMU to Sherman. Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


MILLER, J.[*]


---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.