Filed 6/30/23  Shaw v. Crabtree CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NOLAN SHAW, Individually and as Personal Representative, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROBERT W. CRABTREE et al., <br><br> Defendants and Appellants. | F083634 <br><br> (Super. Ct. No. CV-21-002353) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Crabtree Schmidt and Michael R. Dennis for Defendants and Appellants.

Broderick Legal Group, William Broderick-Villa; Freeman Firm and Thomas H. Keeling for Plaintiff and Respondent.

-ooOoo-

Civil Code section 1714.10 generally "imposes a prefiling court-approval requirement" upon plaintiffs seeking "to sue an attorney for conspiring with his or her client."  (*Central Concrete Supply Co.*, *Inc. v. Bursak* (2010) 182 Cal.App.4th 1092, 1095.)  (All undesignated statutory references are to the Civil Code.)  Noncompliance

with the prefiling procedures is grounds for a demurrer to the complaint. The statute provides for exemptions, however, and a demurrer attacking exempt claims will be overruled. "An order overruling a demurrer based on section 1714.10 is directly appealable." (*Cortese v. Sherwood* (2018) 26 Cal.App.5th 445, 454.)

In this case, two attorneys and their law firm were sued for participating in a client's alleged efforts to defraud a judgment creditor. The trial court partially overruled a demurrer to the complaint, concluding section 1714.10 did not apply to three causes of action pleaded therein. As to a fourth cause of action, the demurrer was sustained with leave to amend. We affirm the challenged order.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellants are Robert W. Crabtree (Crabtree), Walter J. Schmidt, and the Crabtree Schmidt law firm (Crabtree Schmidt) (collectively, defendants). The respondent is Nolan Shaw, individually and as personal representative of the estate of Stacey Carlson and assignee in trust of the estate of Lonnie Ashlock (plaintiff). The parties, and those whose interests they represent, are known to this court from prior appeals. Although we are quite familiar with the litigation saga, our sole focus is on the allegations in plaintiff's complaint and facts of which we have taken judicial notice.[1]

In July 2016, a tentative statement of decision adverse to defendants' client, Stacey Carlson, was issued in Stanislaus Superior Court case No. 445230 (hereafter "the probate litigation"). On or about October 11, 2016, shortly before the entry of an interim

---

[1]Defendants have requested judicial notice of the fact they represented Stacey Carlson in Stanislaus Superior Court case No. 445230, a consolidated and complex probate matter. Defendants' unopposed request is hereby granted. On our own motion, we take judicial notice that an interim judgment in that case was entered on October 25, 2016; the interim judgment was affirmed in *Estate of Ashlock* (Mar. 14, 2019, F074969) (nonpub. opn.); and the remittitur in case No. F074969 issued on June 19, 2019. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Under the 2016 interim judgment, defendants' client was held liable for over $365,000 in surcharges, and for additional penalties and other monetary obligations in amounts to be determined in bifurcated phases of the litigation. (*Estate of Ashlock* (2020) 45 Cal.App.5th 1066, 1071–1072.) Plaintiff's complaint alleges the total monetary obligation ultimately exceeded $14 million.

judgment in the same case, Stacey Carlson executed a $250,000 promissory note in favor of defendants. The promissory note was secured by a deed of trust and assignment of rents (deed of trust) encumbering what plaintiff describes as Stacey Carlson's "45 acre ranch, with dwellings, located [in] … Stanislaus County." On October 14, 2016, Crabtree Schmidt caused the deed of trust to be recorded with the Stanislaus County Recorder's Office.[2]

The deed of trust identified the trustor as "Stacey Carlson[,] Trustee of the Carlson Family 2013 Trust." Crabtree Schmidt was named as trustee. Crabtree was individually designated as the beneficiary.

Stacey Carlson unsuccessfully appealed the 2016 interim judgment. (See fn. 1, *ante*.) Defendants were her appellate counsel, and they also continued to represent her in the probate court as the probate litigation moved forward in bifurcated phases concerning her liability for attorney fees, additional surcharges, and other monetary penalties. (*Ibid*.; *Estate of Ashlock*, *supra*, 45 Cal.App.5th at pp. 1069–1072.)

Plaintiff alleges Stacey Carlson was served with an "OEX lien on January 10, 2017," and the "OEX was taken on February 1, 2017."[3] Plaintiff further alleges that a "[s]heriff's levy [was] served on Crabtree Schmidt's client trust account[, which also

---

[2]Plaintiff's complaint alleges the deed of trust was recorded by Stacey Carlson. However, as noted in defendants' briefing, the document says the recording was requested by "Crabtree Schmidt Attorneys at Law." (Some capitalization omitted.) A copy of the deed of trust is attached to the complaint as an exhibit. "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits." (*SC Manufactured Homes*, *Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

[3]A judgment creditor may obtain "an order requiring the judgment debtor to appear before the court, or before a referee appointed by the court, at a time and place specified in the order, to furnish information to aid in enforcement of the money judgment." (Code Civ. Proc., § 708.110, subd. (a).) "Service of the order creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court." (*Id*., subd. (d).) Practitioners commonly use the term "OEX" as a shorthand reference to both the order and the actual examination of the debtor.

3.

created] a lien." The complaint does not say when the levy occurred, but it implies the date was sometime between October 2016 and February 2017.[4]

Defendant Crabtree represented Stacey Carlson at the debtor's examination conducted on February 1, 2017. During the examination, Stacey Carlson allegedly testified to having no money in Crabtree Schmidt's client trust account. She further claimed, in plaintiff's words, "that any funds in her Crabtree Schmidt client trust account had been depleted 'way before' the service of the OEX lien on January 10, 2017."

On February 8, 2017, an insurance agency in Turlock mailed a $3,600 check to "Nationwide Agribusiness," allegedly to pay for "Stacey Carlson's 2017 insurance premiums." The check had been written from Crabtree Schmidt's client trust account and signed by defendant Crabtree. The check was dated January 9, 2017, i.e., one day prior to when Stacey Carlson was served with the OEX. Plaintiff alleges the check was likely "backdated" since it was not mailed until one month later.

In May 2017, defendants assisted Stacey Carlson's father, Robert L. Carlson, with the formation of a legal entity called "Villa Fran Mandel, LLC." In June 2017, defendants assisted with the execution and recording of a 34-year lease agreement between Stacey Carlson, on behalf of the Carlson Family 2013 Trust, and Villa Fran Mandel, LLC. The lease concerned Stacey Carlson's 45-acre ranch, i.e., the same property in which defendants ostensibly held a $250,000 security interest by virtue of the October 2016 deed of trust. Plaintiff alleges defendants' involvement in those transactions was "for the purpose of defrauding creditors."

---

[4]A judgment creditor may obtain a writ of execution directing the sheriff or other levying officer to enforce the judgment. (Code Civ. Proc, §§ 699.510, 699.520.) The judgment creditor then provides written instructions to the levying officer describing the property to be levied upon. (*Id*., § 687.010, subd. (a).) "A levy on property under a writ of execution creates an execution lien on the property from the time of levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied." (*Id*., § 697.710.)

In October 2017, during proceedings in the probate litigation, defendant Crabtree was found to have misappropriated $48,000 that was subject to, in plaintiff's words, "valid levies against funds Ms. Carlson held in trust with Crabtree Schmidt and with [another law firm,] McCormick Barstow." Plaintiff alleges Crabtree "helped McCormick Barstow transfer funds (in violation of the automatic lien), and then spent the funds while the issue [of entitlement to the money] was pending before the [probate court]." A specific finding was made that "Crabtree Schmidt had no right to those funds upon receipt from McCormick Barstow," and "those funds should have been turned over to the sheriff, the levying officer." In addition, Crabtree was allegedly found to have "actively assisted Stacey Carlson in hiding assets from judgment creditors[,] namely the estate of Lonnie Ashlock." (Some capitalization omitted.)

Stacey Carlson died in November 2020. Plaintiff Nolan Shaw subsequently became "the Court-appointed Personal Representative" of her estate. At some point in time (the record does not say when), Nolan Shaw also became the "Assignee in Trust of the judgement [*sic*] against Stacey Carlson held by the Estate of Lonnie Ashlock."[5]

On May 3, 2021, plaintiff filed a verified complaint against defendants alleging three causes of action under the Uniform Voidable Transactions Act (§ 3439 et seq.) and one cause of action for declaratory relief. The first three causes of action were respectively based on defendants' recording of the deed trust, movement of funds through their client trust account (specifically the $3,600 check), and the $48,000 transaction involving McCormick Barstow. The claim for declaratory relief sought to establish "that, to the extent attorneys assisted Stacey Carlson in avoiding creditors and/or otherwise

---

[5]On our own motion, for the sake of clarity, we take judicial notice that Nolan Shaw is a close relative of decedent Lonnie Ashlock's son and legal heir, Gabriel Ashlock. Gabriel Ashlock, individually and as administrator of his father's estate, was adverse to Stacey Carlson in the underlying probate litigation. The complaint generally implies, and the record on appeal confirms, that Nolan Shaw was appointed personal representative of the estate of Stacey Carlson over the objections of Ms. Carlson's heirs, including her father and children. The complaint alleges that defendants provided legal representation to those heirs following her death.

violating the law, any communications between [a]ttorneys and Stacey (and/or agents of either) are non-privileged communications."

In July 2021, defendants filed a general and special demurrer to the complaint. As relevant here, defendants argued plaintiff was obligated, and had failed, to comply with the prefiling procedures of section 1714.10. They asserted that the exemptions in subdivision (c) of the statute did not apply and the pleadings established a defense under the "'agent's immunity rule.'" Additionally, as to the first and second causes of action, defendants argued the pleaded facts did not negate a defense under section 3432, which generally allows a debtor to "pay one creditor in preference to another."

Plaintiff opposed the demurrer, arguing that claims under the Uniform Voidable Transactions Act are categorically beyond the scope of section 1714.10. Plaintiff also insisted he had not alleged a civil conspiracy between defendants and Stacey Carlson, but he alternatively contended the exemptions in section 1714.10, subdivision (c), were applicable. Some of the alternative contentions relied on extrinsic evidence, and plaintiff made a contingent request for leave to amend.

On November 2, 2021, the trial court issued a tentative decision to overrule the demurrer except as to the fourth cause of action, and to grant leave to amend. The matter was heard the following day. At the hearing, defense counsel sought clarification of the discrepancy in finding section 1714.10 applied to the claim for declaratory relief but was not applicable to the other causes of action. The trial court responded: "Section 1714.10 does not apply to [a Uniform Voidable Transactions Act] complaint … and the Court found that that was the issue for Counts I through III. However, there is an issue as to whether or not the [Uniform Voidable Transactions Act] applies to Count IV; therefore, that is why the Court sustained that demurrer with a leave to amend."

On December 1, 2021, the trial court issued a final order adopting its tentative ruling. Defendants filed a timely notice of appeal.

## DISCUSSION

## I.      Legal Overview

### A.      Uniform Voidable Transactions Act

The Uniform Voidable Transactions Act (UVTA) "is a contemporary retooling of the common law remedies available to unsecured creditors seeking payment from debtors who evade collection." (*Nagel v. Westen* (2021) 59 Cal.App.5th 740, 747.)  "Originally enacted as the 'Uniform Fraudulent Transfer Act' [(UFTA)] in 1986, its retitling in 2016 reflected the Legislature's intent to 'reduce misconceptions that the law requires proof of fraudulent intent.'  [Citation.]  Little else changed in substance." (*Ibid*.)  Because the UVTA "did not alter the essential elements of a cause of action for a fraudulent or voidable transfer," appellate courts "may rely on opinions addressing the UFTA" for purposes of analyzing the sufficiency of a pleading.  (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 455, fn. 8.)

A transfer of assets or an obligation incurred by a debtor, if done with the intent "to hinder, delay, *or* defraud any creditor," *or* without receiving a reasonably equivalent value in exchange therefor, "is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred."  (§ 3439.04, subd. (a), italics added.)  "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance."  (§ 3439.01, subd. (m).)

The UVTA "anticipates imaginative debtors will employ an array of tactics to evade payment obligations."  (*Nagel v. Westen*, *supra*, 59 Cal.App.5th at pp. 749–750.)  Accordingly, it "enumerates eleven characteristics or '"badges of fraud"' to help the trier of fact discern when a debtor has crossed the often blurry line between legitimate asset

7.

protection planning and voidable maneuvering." (*Id*. at p. 748.) The nonexhaustive list of relevant factors is as follows:

"(1) Whether the transfer or obligation was to an insider.

"(2) Whether the debtor retained possession or control of the property transferred after the transfer.

"(3) Whether the transfer or obligation was disclosed or concealed.

"(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

"(5) Whether the transfer was of substantially all the debtor's assets.

"(6) Whether the debtor absconded.

"(7) Whether the debtor removed or concealed assets.

"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

"[and]

"(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor." (§ 3439.04, subd. (b).)

"The UVTA provides a variety of tools to achieve its ends. For example, the court may void a transfer of assets, attach assets, or employ equitable remedies such as injunctive relief or receivership." (*Nagel v. Westen*, *supra*, 59 Cal.App.5th at p. 748, citing § 3439.07.) The creditor may recover "against (1) the first transferee of the fraudulently transferred asset, (2) the transfer beneficiary, and (3) any subsequent

8.

transferee other than a good faith transferee." (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071, citing § 3439.08, subd. (b)(1) & (2).)

## B. Section 1714.10

Section 1714.10, subdivision (a) provides:

> "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall order service of the petition upon the party against whom the action is proposed to be filed and permit that party to submit opposing affidavits prior to making its determination. The filing of the petition, proposed pleading, and accompanying affidavits shall toll the running of any applicable statute of limitations until the final determination of the matter, which ruling, if favorable to the petitioning party, shall permit the proposed pleading to be filed."

In short, section 1714.10 generally "requires a litigant to obtain court approval to file a complaint containing conspiracy allegations between an attorney and his or her client." (*MMM Holdings*, *Inc. v. Reich* (2018) 21 Cal.App.5th 167, 186.) "The purpose of the statute is to 'discourage frivolous claims that an attorney conspired with his or her client to harm another. Therefore, rather than requiring the attorney to defeat the claim by showing it is legally meritless, the plaintiff must make a prima facie showing before being allowed to assert the claim.'" (*Ibid*., quoting *Klotz v. Milbank*, *Tweed*, *Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1350.)

Section 1714.10 expressly provides for two exemptions. The prefiling procedures "shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the

9.

attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (*Id*., subd. (c).) The quoted language, which was added to the statute in 1991, essentially codifies the holding of *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 (*Doctors' Co*.). (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 391–392.)

The statutory exemptions "mirror the limits on an attorney's liability for conspiracy established by our Supreme Court in *Doctors' Co. ….* The Supreme Court explained a cause of action for conspiracy cannot lie 'if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty.' [Citation.] This is an application of the 'agent's immunity rule,' which holds that ""'an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.""'" (*Central Concrete Supply Co.*, *Inc. v. Bursak*, *supra*, 182 Cal.App.4th at pp. 1099–1100.) However, the agent's immunity rule does not shield an attorney from liability for his or her own fraudulent conduct. (See *Klotz v. Milbank*, *Tweed*, *Hadley & McCloy*, *supra*, 238 Cal.App.4th at p. 1351 ["an attorney has an independent legal duty to refrain from defrauding nonclients"].)

"'The net effect of the agent's immunity rule as articulated in *Doctors' Co*., *supra*, 49 Cal.3d 39, and the statutory exceptions to the section 1714.10 procedural requirements now contained in subdivision (c) is to render [the statute] practically meaningless. … Section 1714.10, at best, provides the attorney with only an additional procedural safeguard against meritless claims. If the plaintiff seeks to plead a conspiracy claim against an attorney based on fraud or virtually any other common law tort theory, the claim falls within section 1714.10, subdivision (c)(1); the procedural requirements of section 1714.10, subdivision (a) do not apply (that is, the plaintiff need not demonstrate a

probability of prevailing on the merits); and the statute serves no screening function whatsoever.'" (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1150–1151.)

"Put another way, 'the effect of the [1991 amendment to section 1714.10] is anomalous. Since[, by virtue of the addition of subdivision (c),] the statute now removes from its scope the two circumstances in which a valid attorney-client conspiracy claim may be asserted, its gatekeeping function applies only to attorney-client conspiracy claims that are not viable as a matter of law in any event. … Thus, a plaintiff who can plead a viable claim for conspiracy against an attorney need not follow the petition procedure outlined in the statute as such a claim necessarily falls within the stated exceptions to its application.' [Citations.]" (*Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1151.)

## II. Standard of Review

Our review of the trial court's ruling is de novo. (*Klotz v. Milbank*, *Tweed*, *Hadley & McCloy*, *supra*, 238 Cal.App.4th at p. 1349; *Pavicich v. Santucci*, *supra*, 85 Cal.App.4th at p. 389.) As such, we are not bound by its arguably inconsistent conclusions regarding the applicability of section 1714.10 to the declaratory relief claim but not the other causes of action. "Generally, 'we will affirm a judgment or order if it is correct on any theory of law applicable to the case, even if it is right for the wrong reasons.'" (*Cape Concord Homeowners Assn. v. City of Escondido* (2017) 7 Cal.App.5th 180, 193.)

"[A] demurrer 'admits the truth of all material factual allegations in the complaint …; the question of plaintiff's ability to prove those allegations, or the possible difficulty in making such proof does not concern the reviewing court.' [Citations.]" (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) Therefore, a

11.

necessary averment "'may appear by inference as well as by direct allegation.'" (*Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1141, quoting *United Bank & Trust Co. v. Fidelity & Deposit Co.* (1928) 204 Cal. 460, 465.)

## III. Analysis

Plaintiff argues his claims are outside the scope of section 1714.10 because they do not, as required by subdivision (a), arise "from any attempt to contest or compromise a claim or dispute." He relies on *Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327, where the statute was held inapplicable to "potentially meritorious claims against a law firm that allegedly conspired to abscond with its clients' assets." (*Id.* at p. 329.) The opinion provides little information about the underlying allegations, but it appears the attorney defendants in *Stueve* were accused of conspiring amongst themselves to defraud their own clients. (*Ibid.*)

The claims in *Stueve* reportedly "arose from transactional activities—the siphoning off of assets through fraudulent estate planning, including the misappropriation of the Stueves' assets through the diversion of those assets to entities created and controlled by the defendants, including [the defendant law firm's] other clients." (*Stueve v. Berger Kahn*, *supra*, 222 Cal.App.4th at p. 331.) There may have been allegations of a conspiracy between the law firm and clients other than the *Stueve* plaintiffs, but there is no indication any claims in *Stueve* arose from the type of representation required by section 1714.10, subdivision (a). We view *Stueve* as inapposite to this case.

Defendants note that section 1714.10, subdivision (a) has been interpreted to mean it applies "to situations in which the alleged conspiracy arose from the attorney's representation of his or her client in a previous or current legal dispute or litigation *with the plaintiff*." (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 209, fn. 16., italics added.) Such is the case here. We are thus unpersuaded by plaintiff's first argument.

12.

Plaintiff also contends section 1714.10 is inapplicable because "the gravamen of the UVTA claims is the unlawful transaction itself." It is true that conspiracy is not an essential element of a UVTA claim. (See *Nagel v. Westen*, *supra*, 59 Cal.App.5th at p. 750 ["one's liability under the UVTA is not contingent upon recruiting conspirators"]; *Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 821 ["Under the UVTA, it is the *transfer* made or the obligation incurred by the debtor which, when made with the requisite intent or without sufficient consideration, is wrongful and, therefore, voidable"].) However, as plaintiff acknowledges, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.) Plaintiff fails to provide any case law suggesting UVTA claims are categorically exempt from section 1714.10 regardless of any express or implied allegations of conspiracy. "[A] cause of action can still fall 'within the initial scope of section 1714.10 … without regard to the labels attached to the cause[] of action or whether the word "conspiracy"—having no talismanic significance—appears in them.'" (*Cortese v. Sherwood*, *supra*, 26 Cal.App.5th at p. 455.)

On the other hand, defendants' demurrer asserted that section 1714.10 was applicable to each cause of action "based on an alleged conspiracy between a debtor (Stacey Carlson) and her attorneys (defendants) to defraud the debtor's creditor (plaintiff)." Assuming defendants are correct about the pleadings necessarily alleging conspiracy for purposes of section 1714.10, subdivision (a), the same allegations trigger the exemptions of subdivision (c). (Cf. *Aghaian v. Minassian*, *supra*, 59 Cal.App.5th at pp. 460–461 [§ 1714.10 held inapplicable to UVTA claim because, "even if plaintiffs had alleged an attorney-client conspiracy," the pleaded facts were "sufficient to satisfy the exception to the prefiling requirement under … subdivision (c)"].) The issue boils down to whether the factual allegations establish a complete defense to the causes of action.

(See *Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1151 [the "'gatekeeping function'" of § 1714.10 "'applies only to attorney-client conspiracy claims that are not viable as a matter of law in any event'"].)

###### A.      First Cause of Action

The complaint alleges defendants took a $250,000 security interest in their client's real property as evidenced by their recording of the subject deed of trust.  Defendants allegedly recorded the deed of trust "in defraud of creditors."  There are also allegations of defendants assisting their client with further encumbering the property through the recorded lease agreement with her father.  (See *Evans v. Faught* (1965) 231 Cal.App.2d 698, 710–711 [explaining why a lease constitutes an encumbrance].)  The facts pled with regard to the lease apparently serve to underscore the contention defendants acted "for the purpose of defrauding judgment creditors."

As previously noted, "an attorney has an independent legal duty to refrain from defrauding nonclients."  (*Klotz v. Milbank*, *Tweed*, *Hadley & McCloy*, *supra*, 238 Cal.App.4th at p. 1351.)  "For example, if an attorney commits actual fraud in his dealings with third parties, the fact that he did so in the capacity of attorney does not relieve him of liability."  (*Pavicich v. Santucci*, *supra*, 85 Cal.App.4th at p. 395.) "'Counsel who circumvent established legal channels to accomplish a desired result, participating with the client in a scheme'" to deprive another of their property, are "'*not* performing the normal services of an attorney.'"  (*Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1154.)

Again, the prefiling requirements of section 1714.10 "shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."  (*Id.*,

14.

subd. (c).)  Plaintiff's allegations of fraud satisfy both provisions.  The complaint does not merely allege defendants facilitated a voidable transfer with fraudulent intent; according to the deed of trust, they were the direct beneficiaries of the transaction.

Defendants argue plaintiff has already conceded that he is not accusing them of fraud.  The accompanying record citations are to the opposition papers below, where plaintiff argued the complaint does not assert a *cause of action* for conspiracy or "common law fraud."  Plaintiff has maintained an alternative position based on section 1714.10, subdivision (c) in the trial court and on appeal.  As explained, the alternative position has merit.

### 1.       The Agent's Immunity Rule

Defendants contend the pleaded facts nevertheless establish "an absolute defense under the agent's immunity rule."  We disagree.

The agent's immunity rule is a judicial doctrine rooted in the principle that "'[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.'"  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at p. 512, fn. 4.)  "In *Doctors' Co.*, *supra*, [the California Supreme Court ruled] that an attorney and an expert witness could not be held liable as coconspirators with the insurer employing them for an alleged violation of statutory provisions prohibiting unfair insurance claims practices."  (*Id.* at p. 512, citing *Doctors' Co.*, *supra*, 49 Cal.3d at p. 44.)  In so holding, the California Supreme Court "emphasized that the statutory duties in question were owed solely by the insurer and therefore could not give rise to conspiracy liability against noninsurers."  (*Allied Equipment Corp.*, at p. 512.)  The high court also said, "[W]e anticipate that the impact of our holding, barring liability of employees or agents for conspiracy to cause their

15.

principal to violate a duty that is binding on the principal alone, will be relatively narrow where the violated duty is other than contractual." (*Doctors' Co*., at p. 48.)

"[W]hen an attorney is acting in his or her official capacity, there are only the situations articulated in *Doctors' Co*., in which an attorney could be liable for conspiring with his or her client. Of course, these situations are specifically excepted from section 1714.10's scope." (*Pavicich v. Santucci*, *supra*, 85 Cal.App.4th at p. 395.) In other words, subdivision (c) of section 1714.10 implicitly recognizes that the agent's immunity rule does not apply if an attorney has breached the independent legal duty to refrain from defrauding nonclients. (See *Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1154.) It further reflects that "[an] independent legal duty may also arise when an attorney engages in conduct that goes 'way beyond the role of [a] legal representative.'" (*Id*. at p. 1152.) Therefore, plaintiff's allegations exempting the first cause of action under subdivision (c) necessarily defeat any defense under the agent's immunity rule at the pleading stage.

### 2.    *Section 3432*

Defendants also rely on section 3432, which provides: "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." The statute establishes a defense to UVTA claims, but only with respect to "a transfer made in good faith to secure an antecedent debt." (*Wyzard v. Goller* (1994) 23 Cal.App.4th 1183, 1190.) The *Wyzard* case holds "that an encumbrance by a debtor to an attorney, made for value in the form of an antecedent obligation for legal services, is not fraudulent as to another creditor, under applicable provisions of the [UVTA] … even though the transfer was a preference that resulted in the debtor being unable to satisfy debts of other creditors." (*Id*. at p. 1185.)

In seeking to invoke section 3432, defendants argue Stacey Carlson "owed her attorneys money for legal services and the Deed of Trust was meant to secure that debt."

However, those purported facts are neither alleged in the complaint nor established by the exhibits. The deed of trust merely shows defendants' client, Stacey Carlson, granted defendants an interest in her real property as security for a $250,000 promissory note "of even date [t]herewith." (See generally *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 ["The security instrument secures the promissory note. This instrument 'entitles the lender to reach some asset of the debtor if the note is not paid'"].) Nothing in the complaint or its exhibits alleges the deed of trust and/or promissory note pertain to an antecedent debt owed for the provision of legal services. Moreover, the complaint alleges "[t]he value of the consideration, if any, received by [Stacey Carlson] for the transfers [alleged therein] was not reasonably equivalent to the value of the asset(s) transferred … or the amount of the obligation incurred."

In their moving papers below, defendants requested judicial notice of testimony given by Crabtree regarding the deed of trust. It does not appear the request was ever ruled upon, but defendants still rely on the testimony to argue the deed of trust "represented security for legal services rendered by [defendants]." We note the cited testimony by Crabtree, given *after* the complaint had been filed, is equivocal and ambiguous in terms of confirming the deed of trust pertained to an antecedent debt. More importantly, the alleged truth of Crabtree's testimony cannot be judicially noticed. (See *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 ["Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof"]; *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22 ["Although the existence of statements contained in a deposition transcript filed as part of the court record can be judicially noticed, their truth is not subject to judicial notice"].)

We also reject defendants' suggestion that plaintiff was obligated to anticipate and plead around a section 3432 defense. "A demurrer based on an affirmative defense

17.

cannot properly be sustained where the action *might* be barred by the defense, but is not *necessarily* barred. [Citation.] Nor is a demurrer the appropriate procedure for determining the truth of disputed facts or what inferences should be drawn where competing inferences are possible." (*CrossTalk Productions*, *Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635.)

The defense afforded by section 3432 "has long been subject to exceptions based on fraud." (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1020.) In determining the statute's applicability, good faith and the existence of an antecedent debt are questions of fact. (See *Universal Home Improvement*, *Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 126.) Section 3432 would provide no defense if, for example, Stacey Carlson did not owe defendants any money when the deed of trust was executed and recorded. "[I]f a transfer while appearing to be a lawful preference is made with actual fraudulent intent that it shall not pay the creditor or give him further security, but with the understanding that it shall be a mere simulated transfer, the grantor retaining the full beneficial interest, such fraudulent intent will vitiate the transfer." (*Kemp v. Lynch* (1937) 8 Cal.2d 457, 460–461.) And good faith could be lacking if, for example, Stacey Carlson did have outstanding legal bills but the amount owed was less than $250,000. (Cf. *Kasolas v. Nicholson* (Bankr. N.D.Cal. 2021) 631 B.R. 425, 467 [rejecting asserted § 3432 defense to UVTA claim and holding "the presence of fraud in a transaction, for example transferring an asset, even to pay a valid claim, for less than fair value, will support a claim for fraudulent transfer"].)

For purposes of the demurrer, it was sufficient for plaintiff to have alleged defendants' actions were taken "in defraud of creditors" and that the transaction was not supported by adequate consideration. Fraud may occur not only through express misrepresentation, but also by concealment and deceit. (*Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 95–96.) "'[Where] the real intent of the parties and the facts of the transaction are peculiarly within the knowledge of those sought to be charged with the

fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties.'" (*Kemp v. Lynch*, *supra*, 8 Cal.2d at p. 462; see *Alfaro v. Community Housing Improvement System & Planning Assn.*, *Inc.* (2009) 171 Cal.App.4th 1356, 1384 ["Less specificity should be required of fraud claims 'when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy"'"].)

## B. Second Cause of Action

The second cause of action concerns the $3,600 check written from Crabtree Schmidt's client trust account, and signed by Crabtree, payable to an insurance company. Liberally construed, the complaint alleges Stacey Carlson's 45-acre ranch included an income-producing almond orchard. Since the check was mailed to "Nationwide Agribusiness," plaintiff's allegation that it was for "Stacey Carlson's 2017 insurance premiums" implies the coverage was for her ranch (as opposed to health insurance, life insurance, or something similarly unrelated to agribusiness).

The deed of trust expressly required Stacey Carlson to "provide, maintain and deliver to [Crabtree] fire insurance satisfactory to and with loss payable to [Crabtree]." The stated purpose of this requirement was "to protect the security of [the] deed of trust." (Capitalization omitted.) Read in conjunction with the other allegations, the complaint implies defendants' involvement in the $3,600 transaction was at least partially for their own benefit. In addition to express allegations of fraudulent intent, "backdating" the check and funneling a judgment debtor's money through a client trust account that had already been levied upon and/or despite knowledge of other applicable liens is fairly construed as going "beyond the performance of a professional duty to serve the client." (§ 1714.10, subd. (c).) Therefore, the second cause of action is exempt from the prefiling requirements of section 1714.10.

19.

For the reasons discussed above, plaintiff's allegations of fraud prevail over the agent's immunity rule at the pleading stage. Defendants' reliance upon section 3432 also fails. Several questions of fact exist as to whether the $3,600 was paid to a creditor in good faith to satisfy an antecedent debt.

The UVTA defines a debt as "liability on a claim"; a claim as "a right to payment"; and a creditor as "a person that has a claim." (§ 3439.01, subds. (b)–(d).) As a matter of common experience, insurance companies do not typically provide coverage first and then accept payment in arrears. What laypersons may colloquially refer to as an "insurance bill" is usually a statement regarding the amount to be paid *in advance* for future coverage. Failure to pay the premium does not necessarily mean the insurance company has an enforceable "claim" for money against the would-be insured; nonpayment simply results in cancellation of the policy. At the very least, there is a question of fact regarding defendants' labeling of the transaction as one involving the payment of "an actual pre-existing debt."

### C.  Third Cause of Action

The third cause of action involved the $48,000 transaction with McCormick Barstow. Defendants interpret the complaint as alleging Stacey Carlson paid this money to McCormick Barstow as a "retainer," and McCormick Barstow subsequently transferred the money to Crabtree. The complaint plainly alleges Crabtree misappropriated the money for defendants' own benefit, made misrepresentations to the probate court regarding the transaction, and was found to have "actively assisted Stacey Carlson in hiding assets" from a judgment creditor when "those funds should have been turned over to … the levying officer." We easily conclude such conduct is "beyond the performance of a professional duty to serve the client" and that section 1714.10, subdivision (c) applies to the claim.

20.

Defendants make little attempt to refute the above conclusion. Their only real argument is that the cause of action seeks double recovery. They rely on extrinsic evidence of an admission plaintiff has already recovered the $48,000 from McCormick Barstow. Even if true, that fact does not provide an absolute defense to the claim.

A similar "double recovery" argument was rejected *Berger v. Varum* (2019) 35 Cal.App.5th 1013, which also involved a demurrer to a UVTA complaint. (*Berger*, at pp. 1024–1025.) "Case law has established the remedies specified in the UVTA are cumulative and not the exclusive remedy for fraudulent conveyances" (*id*. at p. 1019), and the UVTA itself broadly allows for any relief "the circumstances may require" (§ 3439.07, subd. (a)(3)(C).) Plaintiff's complaint seeks to have the $48,000 transaction voided, an order requiring defendants to pay "[a] sum no less than $48,000.00," and "[f]or such other and further relief that the Court may consider proper." Prior recovery of the $48,000 from McCormick Barstow may affect plaintiff's ability to obtain all forms of relief requested, but it does not defeat the cause of action as a matter of law.

### D. Fourth Cause of Action

The fourth cause of action is pleaded in a single-sentence paragraph:

"Plaintiff seeks Declaratory Relief against [defendants] declaring that, to the extent attorneys assisted Stacey Carlson in avoiding creditors and/or otherwise violating the law, any communications between Attorneys and Stacey (and/or agents of either) are non-privileged communications."

The trial court sustained the demurrer to this cause of action with leave to amend. Defendants argue for reversal, but only with respect to the granting of leave to amend. They rely solely upon their argument that the complaint "provides the absolute defense of agent immunity on its face." As we have rejected this argument in relation to the first three causes of action, and have also rejected their reliance upon section 3432, defendants' challenge to the granting of leave to amend fails.

21.

Plaintiff does not challenge the partial sustaining of the demurrer, and he apparently has no issue with filing an amended complaint.  Since neither party has shown this ruling could not be upheld "upon any theory of law applicable to the case" (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568), we leave it undisturbed.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


DE SANTOS, J.

22.